PIERCE *v.* C. H. BIDWELL THRESHER CO.

153   323
s158   357

1. Negligence — Personal Injuries — Defective Machinery — Liability of Manufacturer.

   In an action against the manufacturer of a threshing machine for injuries to a laboror using the machine in the usual course of business, caused by a concealed defect in the structure of the machine, instructions examined, and *held*, sufficiently favorable to defendant.

2. Same—Character of Defect—Danger to Life or Limb.

   Where it was expected that the decking of a threshing machine over the cylinder would be used as a platform upon which operatives would have occasion to go frequently while the machine was in operation, and it was known that the consequence of breaking through would be most serious, the question whether it was imminently dangerous to human life or limb to place such machine on the market with a portion of the boards of the decking supported at one end only by four-penny nails driven upward through boards seven-eighths of an inch thick into maple cleats, not clinched or otherwise fastened, was at least one for the jury, though there was no expert testimony offered as to the dangerous character of the construction.

3. Same—Knowledge of Defect.

   The manufacturer having knowledge of the manner of construction and of the uses to which the machine was to be put, the question whether he had a full appreciation of the danger was at least a question for the jury.

4. Same—Damages—Loss of Earning Power—Evidence.

   Where, in a personal injury case, there is no testimony offered to show the earning capacity of the plaintiff, nor how much it has been diminished by the injury, it is error to instruct the jury that in awarding damages they may consider to what extent the injury has actually damaged plaintiff in his daily avocation and pursuit of life, and to refuse instructions of a contrary tenor.

Error to Eaton; Smith, J.   Submitted June 4, 1908. (Docket No. 32.) · Decided June 27, 1908.

Case by Loren D. Pierce against the C. H. Bidwell Threshing Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Thomas, Cummins & Nichols*, for appellant.

*Frank A. Dean, Ernest G. Davids*, and *Huggett & McPeek*, for appellee.

MONTGOMERY, J. The defendant is engaged in the business of manufacturing and placing upon the market threshing machines. On the 20th of September, 1906, the plaintiff was injured by breaking through the decking and into the cylinder of a machine which had been manufactured by defendant and sold to one Joseph Harned in the summer of 1905. The machine was what is known as a Bidwell bean thresher. The mechanism of this machine consisted in part of a cylinder, with metal frame and teeth, situated near the top and toward the rear of the machine, and which, when the machine was in operation, revolved rapidly and would of course injure any one who came into contact with it. Above this cylinder was a removable decking made of narrow, soft-wood boards running crosswise of the machine, and the ends of which, except as hereinafter stated, rested on the outer frame work of the machine. This piece of decking was three feet, ten and one-half inches long and about three feet wide. The boards were seven-eighths of an inch thick and were matched together with tongue and groove matching. The three forward boards were altogether nine and one-half inches wide. At the forward right-hand corner, an opening was made for an elevator spout by cutting two of the boards entirely and a third one partly off, leaving one inch of the third board running through and resting on the sill. Above these boards about three inches from the point where they were cut off, and extending across them onto the adjoining boards on either side was a cleat, thirteen inches long, three inches wide, and seven-eighths of an inch thick. The

three boards were nailed to this cleat with four-penny nails driven from the under side. The cleat was of hard maple. The nails were not long enough to go through the maple cleat, nor were they in any manner clinched. There were six of these nails in the three boards, only five of which penetrated the maple cleat. The whole decking was painted inside and out with a priming coat, and the outside was painted with what is called " decking paint." At each end of the platform and between the corners of the piece of decking was a hole, from which an oil pipe led to the cylinder boxes, and it was shown that it was the custom to go upon this deck for the purpose of oiling these cylinder boxes frequently. It also appeared that the elevator spout ran into this opening; that it occasionally clogged, and on such occasions it was necessary to go upon the decking for the purpose of opening it up.

Mr. Harned purchased this machine in 1905, and used it for some five weeks, and had started in to use it in the season of 1906, and on the fifth day it was in use in that year, the plaintiff, while going upon this platform for the purpose of reaching the tool box, stepped upon this portion of the decking supported only by these nails driven from underneath, his foot went through and he received a very serious injury which made it necessary to amputate his foot a few inches above the ankle. This thresher has been manufactured a good many years, and a number of them sold in Eaton county, where this injury occurred.

The plaintiff offered no expert evidence to show that this decking as constructed was dangerous to life and limb, but relied upon the structure itself for such evidence. The defendant offered testimony of the treasurer and sales manager and of its superintendent at the factory who all disclaimed any knowledge that the structure was or was claimed to be dangerous before the injury in question occurred.

Prior to the injury of the plaintiff, he had been a farm laborer, working out by the day and month. Since his injury, during the season of 1907, he worked a farm for

himself. No evidence was introduced as to his earnings either before or after the injury, nor as to his life expectancy.

The circuit judge charged the jury as follows:

"The action in the case is based upon the theory that the manufacturer—I am now giving you the theory of the plaintiff—that the manufacturer or vendor of an article or machine, which he knows when he sells it to be imminently dangerous by reason of defects therein, concealed or not readily discoverable, to the life or limbs of anyone who shall use it for the purpose for which it was made and intended, will be liable to any stranger to the contract of sale, for an injury which he may sustain as a consequence of such defect, and while he is legally and without fault on his part applying such articles or machine to its proper and intended use. This claim has been made to rest upon the underlying principle of the law of negligence, that it is the duty of everyone to so act himself and to use his property as to do no unnecessary damage to his neighbor. Actions for negligence are actions for a breach of duty; they are clearly distinguishable from actions on contracts, which are for breaches of agreements. The limits of liability for negligence are consequently not the limits of liability for breach of contract. And so you are instructed that in your investigation and determination of this case you should be guided by the well-established rule that one who sells or delivers an article which he knows to be imminently dangerous to life or limb, to another, without notice of its qualities in this particular, is liable to any person who, without fault on his part, suffers an injury therefrom, which might have been reasonably anticipated, whether there were any contractual relations between the parties or not.

"You are instructed that, if one engaged in the business of manufacturing goods not ordinarily of a dangerous nature to be put upon the market for sale and ultimate use, so negligently constructs an article that by reason of such negligence it will obviously endanger the life or limb of any one who may use it, and if the manufacturer, knowing of such defect, and knowing that the same is so concealed that it is not likely to be discovered, puts the article in his stock for sale, and sells and disposes of the same to anyone without notice of such dangerous condition, he is liable for injuries caused by such negligence, to any-

one into whose hands the dangerous article or implement may come for use in the usual course of business, or who may be employed in the proper and lawful use or operation of any such dangerous article or implement, without fault on his part, even though there may be no contractual relations between such injured party and the manufacturer.

"The gist of this case, gentlemen, is really in the instruction that I am now about to give you.

"You are instructed that should you find from the evidence in this case that the decking of the machine in question contained the defect alleged in the declaration, and which defect rendered said machine dangerous to the life or limb of those who might be operating it; that this defective and dangerous condition was so concealed by defendant that it could not be readily discovered by those operating or working on the machine; and if you further find from the evidence in the case that the machine in question was, as constructed by defendant, imminently dangerous to the life and limb of anyone who should operate the same; that the defendant knew of this defective and dangerous condition when it sold and supplied the machine to the employer of the plaintiff and knowingly failed to disclose this condition and that plaintiff sustained the injury shown through and in consequence of this defect without fault on his part, your verdict should be for the plaintiff, and you should award him such damages as you shall deem him justly entitled to under the instructions I will give you regarding the measure of damages."

There can be no doubt that these instructions are sufficiently favorable to the defendant if there was testimony which justified the finding of the jury of the facts requisite for a recovery under the instructions given. See note to *Griffin* v. *Jackson Light Co.*, 92 Am. St. Rep. 552 (128 Mich. 653, 55 L. R. A. 318); *Bright* v. *Barnett & Record Co.*, 88 Wis. 299 (26 L. R. A. 524); *Schubert* v. *J. R. Clark Co.*, 15 L. R. A. 818 (49 Minn. 331); *Huset* v. *Machine Co.*, 61 L. R. A. 303 (120 Fed. 865); *O'Neill* v. *James*, 138 Mich. 567 (68 L. R. A. 342). In fact it is not contended by the defendant that the rule stated by the circuit judge was improper. But it is contended that the verdict should not be sustained for the reason that

there was no evidence justifying a finding of the jury either that the structure complained of was imminently dangerous to human life or limb, or that the defendant knew and understood when it made and sold the machine that because of such construction it was imminently dangerous to human life and limb.

We think it was entirely proper to submit to the jury the question of whether this construction was such as to make the machine imminently dangerous to life or limb. It is not questioned that it was expected that this decking would be used as a platform upon which the employés engaged in operating this machine would have occasion to go frequently while the machine was in operation. Nor is it questioned that the consequences of breaking through this decking would most obviously be serious. The question then presented is whether it was necessary to call expert testimony of mechanics to enlighten the jury upon the question of whether driving four-penny nails upward into a cleat would be imminently likely to result in letting a man down into the cylinder who stepped his weight upon these boards supported in no other manner. We think it altogether clear that this question was at least a question for the jury. All that stood between the plaintiff and the most serious injury was the friction which held this nail in the hole which it had created by being driven into the wood from underneath. It does not need expert testimony to demonstrate such a simple rule in physics. There could be but one result of placing any great weight upon this place, and the jury were amply justified in finding that the structure was imminently dangerous. There was nothing to indicate to the workman just how this was fastened, even had the duty rested upon him of making an inspection. It was being used for the purpose indicated, and he had the right to rely upon the apparent invitation to use it in that manner.

But it is urged that even if this structure was imminently dangerous, it does not follow that the defendant

had knowledge of or appreciation of the dangerous character of the structure.

In saying that there is sufficient in the structure itself to justify a finding by the jury that the same was inherently imminently dangerous to life and limb, it is implied that it was such to the knowledge of the defendant. The defendant was the manufacturer. It had knowledge of the uses to which this machine was to be subjected. It had knowledge of the manner of construction, and even if a full appreciation of the danger by the defendant was essential to make out the plaintiff's case, it would at least be a question for the jury as to whether defendant had such appreciation at the time this machine was constructed and placed upon the market. The language of the court, in *Schubert* v. *J. R. Clark Co.*, supra, in dealing with a similar question as it related to a ladder, defects in which were concealed by paint, is peculiarly appropriate. The court say:

"The defendant is to be deemed to have known the fact alleged,—that the dangerous defects were concealed by the application of oil, paint, and varnish,—although we do not understand that this was applied for the purpose of concealing such defects. It would seem that after that was done the defendant could not have distinguished this ladder from any other of its manufactured goods of a like kind. If, then, the defendant did not know, and could not have discovered, at the time of delivering this ladder to the plaintiff, that it was defective, there could be no wrong in not then disclosing the existence of defects in this particular article, which were neither known nor discoverable; and the question of the defendant's liability reaches back to the time of manufacturing and putting into its stock of goods for sale an article then known to be dangerously defective, the defects being concealed, and not likely to be discovered, either by any intermediate purchaser standing between the defendant and the person who might procure the ladder for use, or by the latter person. We shall assume, then, that there was no wrongful conduct when the ladder was delivered, but only, if at all, when it was manufactured, and put in the defendant's general stock for sale. In this view of the case, the

wrongful conduct of the defendant and the injury resulting therefrom would be somewhat more widely separated in time and in the order of events than in the case as we have heretofore assumed it to have been; but it would not change their real relation as cause and effect, nor so qualify that relation that the law would regard the injury as being so remote from the wrong that for that reason responsibility should cease. When the defendant manufactured and put the dangerously faulty article in its stock for sale, it is to be deemed to have anticipated that, in the ordinary course of events, it would come to the hands of a purchaser, either directly from the defendant or from some intermediate dealer, for actual use, and with the consequences which actually were suffered."

We think there was no error in submitting the question to the jury in the form in which it was put.

The defendant requested the court to charge the jury as follows:

"There is no evidence in this case as to any loss of earning capacity on the part of plaintiff. You are not permitted to guess at such loss, and therefore can award nothing in the way of damages for loss of earning capacity.

"There is no evidence in this case as to the probable duration of plaintiff's life, hence you cannot award any damages for the future loss of plaintiff by reason of his injury."

These requests were refused, and the court charged the jury that in awarding damages they were at liberty to consider to what extent this injury has actually damaged him in his daily avocation and pursuit in life.

We are constrained to hold that in refusing the instructions preferred and in giving the instruction excepted to, there was error. There was no testimony given tending to show what the earning capacity of the plaintiff was nor how much it had been diminished by this injury. The defendant therefore had no opportunity to meet that claim. The jury, acting upon their own judgment, uninstructed by testimony, must have agreed upon some basis to estimate this element of damages. This we think they

were not authorized in law to do. A case substantially on all fours is that of *Staal* v. *Railroad Co.*, 107 N. Y. 625. See, also, *Britton* v. *Railway Co.*, 90 Mich. 164; *Winter* v. *Railway Co.*, 74 Iowa, 448. The verdict in this case was $6,500. We are not able to say that this error was error without prejudice.

The judgment must be reversed, and a new trial ordered.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.