## PATRICK H. O'BRIEN v. AMERICAN BRIDGE COMPANY OF NEW JERSEY.[1]

April 8, 1910.

Nos. 16,389—(209).

**Breach of Contract — Liability to Stranger.**

The mere fact that the party sought to be charged has broken his contract with the other party thereto is not of itself sufficient to render him liable for consequential damages to a stranger to that contract. Winterbottom v. Wright, 10 M. & W. 109, distinguished.

**Duty to Use Ordinary Care to Avoid Danger.**

As a general, not as a universal, rule "whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." Heaven v. Pender, 11 Q. B. D. 503, followed and applied.

**Damages Recoverable by Third Party — Concealed Danger.**

When the breach of a contract has resulted in proximate and substantial damages to a stranger thereto because of the negligence of one party to that agreement, such damages are recoverable if the agency, causing the harm complained of, be of a noxious or dangerous kind, and the party sought to be charged as a manufacturer or contractor had knowledge of its being in such a state as would amount to a concealed danger to persons using it in an ordinary manner and with ordinary care.

**Same.**

It is sufficient if the agency be "potentially dangerous." Its noxious or dangerous character refers not so much to its intrinsic quality as to the extremity and imminence of the peril which its ordinary use with ordinary care involves.

[1] Reported in 125 N. W. 1012.

[Note] Liability of contractors to third persons for defects in his work after its completion and acceptance, see note to First Presbyterian Congregation v. Smith (Pa.) 26 L.R.A. 504.

**Tracing Effect of Wrongful Act.**

> The effect of the original wrongful act may be traced in accordance with general principles of causation through the unconscious intermediate agents who may be parties to the contract.

**Collapse of Bridge Erected by Defendant.**

> Defendant was responsible for the erection of a bridge under contract. Five or six weeks after its acceptance it collapsed, while plaintiff and others were passing over it. Plaintiff was seriously injured. It is *held* that under the pleadings, proof, and charge of the trial court plaintiff is entitled to recover. Schubert v. J. R. Clark Co., 49 Minn. 331, followed and applied.

**Action for Negligence.**

> While the action of deceit rests upon fraudulent, and not merely upon negligent, misrepresentations, the present action lay upon allegations of negligence, although actionable fraud was not shown.

Action in the district court for Ramsey county to recover $25,000 damages for personal injuries sustained in March, 1901, by the collapse of a certain bridge while plaintiff was crossing it. From the evidence it appeared that the bridge was built pursuant to a contract in August, 1900, between the county commissioners of Kingfisher county, territory of Oklahoma, and one J. W. Hoover for its erection for the sum of $1,800, which contract was assigned by Hoover to the defendant in December, 1900.

The complaint, as amended, alleged that the bridge was upon a certain public highway and in erecting it defendant negligently used unfit and insufficient material therefor, and negligently put the same together in a careless, negligent and improper manner, so as to render the structure liable to fall and unsafe for the passage of the public or individuals over it. The answer denied these allegations and set out at length the statute of limitations of the territory of Oklahoma. The reply set up the terms of section 4219, Statutes 1903, which provides that "the period limited for the commencement of the action" shall not run while defendant is absent from the territory, and alleged that defendant never had been in the territory of Oklahoma since March 17, 1901.

The case was tried before Bunn, J., and a jury which returned a verdict in favor of plaintiff for $11,000. From an order denying

defendant's motion to set aside the verdict and for a new trial, defendant appealed. Affirmed.

*Haff & Michaels* and *Davis, Kellogg & Severance,* for appellant. *E. H. McVey* and *Thomas P. McNamara,* for respondent.

JAGGARD, J.

Defendant was responsible for the erection of a bridge under contract. The county itself constructed the approaches and connected them with the bridge. Five or six weeks after the acceptance of the bridge it collapsed, while plaintiff and others were crossing over it. One person was killed, and others, including plaintiff, were injured. In this an action to recover therefor the jury awarded plaintiff $11,000. From an order denying defendant's motion for a new trial, this appeal was taken. The law applicable to such a state of facts is familiar, and in its general outlines well settled.

1. In the English law, there are at least four distinct and different principles applicable to related states of fact which are established by as many separate lines of decisions, namely: (1) The principle established by the cases of which Winterbottom v. Wright, 10 M. & W. 109, may be taken as an example; (2) the principle of Nelson v. Liverpool, [1877] 2 C. P. D. 311; (3) the principle of Indermaur v. Dames, [1866] L. R. 1 C. P. 274, [1867] 2 C. P. 311; (4) the principle of Langridge v. Levy, [1837] 2 M. & W. 519, and of George v. Skivington, [1869] L. R. 5 Exch. 1. See Lord Atkinson in Cavalier v. Pope, [1906] A. C. 428, at 432, 433.

It is convenient and sufficient for present purposes, although it may not be strictly necessary, to regard the case at bar as involving the rules laid down in the first and fourth classes of cases.

The principle of Winterbottom v. Wright has been frequently misconstrued, misstated, and misapplied. There the declaration demurred to set forth that the dangerous condition of the coach which was supplied by defendant to plaintiff's master, and by which plaintiff was hurt, was due to "certain latent defects." In consequence that "declaration was nothing more than an attempt to sue on that contract by a person who was a total stranger to it." Clerk & Lindsell, Torts (Can. Ed.) 478. The facts of Longmeid v. Holliday,

6 Ex. 761, have been still more grossly distorted. In that case "the jury found bona fides and no negligence on the part of the vendor." Kelly, C. B., in George v. Skivington, supra. "The decision itself cannot be regarded as any authority for the proposition stated in the headnote." Clerk & Lindsell, Torts (Can. Ed.) 478. Mr. Pollock has pointed out that what Winterbottom v. Wright and Longmeid v. Holliday decided was, not that "facts which constitute a contract cannot have any other legal effect, * * * [but] something different and much more rational, namely, that if A. breaks his contract with B. * * * that is not of itself sufficient to make A. liable to C., a stranger to the contract, for consequential damages." Pollock, Torts (8th Ed.) 546. And see Baumwoll v. Furness, L. R. [1893] A. C. 16.

In the fourth class of cases the underlying principle, of general, though not of universal, application, upon which the liability in Heaven v. Pender, 11 Q. B. D. 503, has been enforced, was thus formulated by Brett, M. R.: "Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger. * * *" The authorities are regarded by Clerk & Lindsell (whose discussion is most thoughtful and exhaustive) as establishing these propositions, namely: A duty with respect to instrumentalities delivered under contract may exist towards others than the contracting parties. That duty extends to all persons likely to be injured by defendant's want of care, providing it is reasonable for such person to rely on care having been taken. To entitle the injured party to complain he must have used the dangerous thing in a manner intended and he must be one of the class of persons by whom the defendant contemplated the thing being used. Clerk & Lindsell, Torts (Can. Ed.) 470. And see general classification of cases on page 468.

Mr. Pollock's view of the English cases is more consistent with an accepted American theory (which suffices to determine this controver-

sy) namely: Two features are conspicuously necessary to the creation of this duty to strangers to a contract: (1) That the thing be of a noxious or dangerous kind; (2) that the builder, manufacturer, or contractor had actual knowledge of its being in such a state of danger as would amount to concealed danger to persons using it in ordinary manner and with ordinary care. Pollock, Torts (8th Ed.) 515. It is convenient to later consider the element of danger. Knowledge of imperfect condition is essential. In Earl v. Lubbock, [1905] 1 K. B. 253–258, plaintiff, a driver in the employment of a firm for whom defendant had agreed to keep in repair a number of vans, was unable to recover damages based on the negligence of the workmen in failing to properly inspect and repair a defective van, because he failed to "adduce evidence to shew that to the knowledge of the defendant the van was in such a condition as to cause danger not necessarily incident to its use." And see note to 1 Am. & Eng. An. Cas. 755. It would serve no useful purpose to detail or discuss the familiar cases on the subject.

Lord Atkinson, in Cavalier v. Pope, supra, at page 433, regards the group here under consideration as including cases of "fraud, misrepresentation * * * warranty, [or] the handing over of a thing known to be dangerous without warning." Some English authorities recognize a very wide liability. For example, in Parry v. Smith, [1879] L. R. 4 C. P. D. 325, 327, defendant, employed by plaintiff's master to repair a gas meter upon his premises, was held responsible to plaintiff in damages consequent upon an explosion of gas, which had escaped by reason of defendant's negligence, when plaintiff in the performance of his ordinary duty went near with a light. Lopes, J., said, at page 327: "I think the plaintiff's right of action is founded on a duty which I believe attaches in every case where a person is using or is dealing with a highly dangerous thing, which, unless managed with the greatest care, is calculated to cause injury to bystanders. To support such a right of action, there need be no privity between the party injured and him by whose breach of duty the injury is caused, nor any fraud, misrepresentation, or concealment; nor need what is done by the defendant amount to a public

nuisance. It is a misfeasance independent of contract." And see Elliott v. Hall, [1885] 15 Q. B. D. 315.

This is not equivalent to requiring that the agency must be "noxious or dangerous in itself" (see, e. g., Caledonian v. Mulholland, H. of L. [Sc.] 1898 A. C. 216), or per se lethal. In Heaven v. Pender, 11 Q. B. D. 503–517, Bowen, C. J., said: "Any one who leaves a dangerous instrument, as a gun, in such a way as to cause danger, or who without due warning supplies to others for use an instrument or thing which to his knowledge, from its construction or otherwise, is in such a condition as to cause danger, not necessarily incident to the use of such an instrument or thing, is liable for injury caused to others by reason of his negligent act." In Clarke v. Army, [1903] 1 K. B. 155, a vendor of tins of chlorinated lime knew it was likely to cause damage to a person opening them unless special care was taken. The danger was not such as presumptively would have been known to or appreciable by a purchaser unless warned of it. It was held that independent of any warranty there was cast upon the vendor the duty to warn the purchaser of the danger. It is sufficient, it was there said, to create the duty that the article be "potentially dangerous."

Few things, like substances capable of spontaneous explosion or combustion, as wet hay, nitro-gylcerine, and flour dust, are intrinsically dangerous. Most perils arise from instrumentalities innocent in themselves, but capable of doing harm on being used in an ordinary and natural manner, as even poisons and most explosives. The initial wrong of exposing innocent persons to the probability of harm from either kind of instrumentality is the same in kind, and may or may not be the same in degree. The expressions "dangerous in itself," "intrinsically dangerous," are not generally used to accurately state a merely metaphysical distinction, of little or no practical value, but are used as synonyms for the "case of a trap, * * * or an invitation to use a trap, or a case of a noxious instrument" (Caledonian v. Mulholland, supra), or a case of "something noxious or dangerous * * * which amounts to a public nuisance." (Malone v. Laskey, [1907] 2 K. B. 141–156).

The English cases generally have placed emphasis, not on whether

the instrumentality is dangerous per se, but whether or not it is imminently or extremely perilous. Cf. O'Neill v. James, 138 Mich. 567, 101 N. W. 828, 68 L.R.A. 342, 110 Am. St. 321, 5 Am. & Eng. An. Cas. 177, with Torgesen v. Schultz, 192 N. Y. 156, 84 N. E. 956, 18 L.R.A.(N.S.) 726, 127 Am. St. 894, as to explosion of bottles. The significance of the English decisions is the greater because of the general tendency of the English courts to limit much more strictly than do the American courts the cases in which a person not a party to a contract may recover under a state of facts of which that contract is a necessary part. 1 Beven, Negligence (3d Ed.) viii.

So far as the doctrine of cause is concerned, no difficulty is experienced in appropriate cases in the transmission of effect of the original wrongful act through intermediate unconscious agents, who are parties to the contract. See Beven, Negligence, 50, 51 (post). In a very late case, Hartley v. Rochdale, [1908] K. B. D. 594, it was held that "the mere passive omission by a road authority to rectify a subsidence in a road in their area, which has been originally occasioned by the neglect of a water company to make good the road after having broken it up for the purposes of their undertaking, does not exonerate the water company from liability for an injury caused to a person using the road by reason of the subsidence." The decision proceeded upon the doctrine in Scott v. Shepherd, 2 Wm. Bl. 1892, Smith, Lead. Cas., 494, not upon the doctrine of Heaven v. Pender, supra: "It must be borne in mind that, though there may intervene various stages in the development of the mischief, yet if none of these is due to conscious volition, the last conscious agent continues to be liable." [Beven, Negligence (3d Ed.) 53] Cf. Corby v. Hill, 4 C. B. (N. S.) 556. It would appear quite certain that under this decision defendants were liable. And see Traill & Sons v. Actieselskabat Dalbeattie, VI Court Sessions (5th Series) 798.

2. The law in this country is in accord. It was pointed out in Moon v. Northern Pac. Ry. Co., 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194, that "one may owe two distinct duties in respect to the same thing—one of a special character to one person, growing out of special relations to him; and another, of a general character, to

those who would necessarily be exposed to risk and danger from the negligent discharge of such duty." It was therefore held that a person injured in the use of an unsafe car could recover from a railroad company, which was not his master, because of the violation of the duty last named.

The leading case on the subject in this state is Schubert v. J. R. Clark Co., 49 Minn. 331, 51 N. W. 1103, 15 L.R.A. 818, 32 Am. St. 559. It was there held that if one engaged in the business of manufacturing goods not ordinarily of a dangerous nature, to be put upon the market for sale and for ultimate use, so negligently constructs an article that by reason of such negligence it will obviously endanger the life or limb of any one who may use it, and if the manufacturer, knowing such defects, and knowing that the same are so concealed that they are not likely to be discovered, puts the article in his stock of goods for sale, he is liable for injuries caused by such negligence to one into whose hands the dangerous implement comes for use in the usual course of business, even though there be no contract relation between the latter and the manufacturer. The instrumentality there involved was a 10-foot ladder "made of poor, coarse-grained, and decayed lumber, and so insufficient in strength as to be dangerous to the life and limb of this plaintiff and whoever might use the same." The ladder was "so varnished, oiled, and painted" that a person could not discover that it was made of defective material. This is the well-settled law in this state. See Holmvik v. Parsons B. C. & S. F. Co., 98 Minn. 424, 108 N. W. 810; Wolden v. Deering, 105 Minn. 259, 117 N. W. 493; Teal v. American Mining Co., 84 Minn. 320, 87 N. W. 837.

The Schubert case has been repeatedly followed and applied by the courts of many jurisdictions. See Lewis v. Terry, 111 Cal. 39, 43 Pac. 398, 31 L.R.A. 220, 52 Am. St. 146 (folding bed); Woodward v. Miller, 119 Ga. 618, 46 S. E. 847, 64 L.R.A. 932, 100 Am. St. 188 (buggy); O'Neill v. James, 138 Mich. 567, 101 N. W. 828, 68 L.R.A. 342, 110 Am. St. 321 (champagne cider bottle); Heindirk v. Louisville, 29 Ky. L. 193, 92 S. W. 608, 5 L.R.A.(N.S.) 1103 (elevator); Tomlinson v. Armour, 75 N. J. L. 748, 70 Atl. 314, 19 L.R.A.(N.S.) 923 (poisoned meat); Clement v. Crosby, 148

Mich. 293, 111 N. W. 746, 10 L.R.A.(N.S.) 588 (stove polish); Pierce v. C. H. Bidwell T. Co., 153 Mich. 323, 116 N. W. 1106 (threshing machine); Peters v. Johnson, 50 W. Va. 644, 41 S. E. 190, 57 L.R.A. 428, 88 Am. St. 915 (drugs); Weiser v. Holzman, 33 Wash. 87, 73 Pac. 797, 99 Am. St. 935 (champagne cider); Keep v. National Tube Co. (C. C.) 154 Fed. 130. Cf., and see note to Kuelling v. Roderick, 183 N. Y. 78, 75 N. E. 1098, 5 Am. & Eng. An. Cas. 128, 2 L.R.A.(N.S.) 303, 111 Am. St. 691.; Watson v. Augusta, 124 Ga. 121, 52 S. E. 152, 1 L.R.A.(N.S.) 1178, 110 Am. St. 157; Crandall v. Boutell, 95 Minn. 114, 103 N. W. 890; Evans v. Chicago & N. W. Ry. Co., 109 Minn. 64, 122 N. W. 879.

The effect of the federal decisions is substantially the same. Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 179, 29 Sup. Ct. 270, 53 L. Ed. 453. Cf. Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621. Huset v. J. I. Case T. M. Co., 120 Fed. 865, 870, 871, 57 C. C. A. 237, 61 L.R.A. 303, in practical effect, followed and applied the rule in the Schubert case, which it purports to regard as unique: That the vendor or manufacturer, who, without giving notice of its character or quality, supplies or delivers to another a machine or article (in this case a threshing machine with a defective cylinder deck—cf. Holmvick v. Parsons B. C. & S. F. Co., supra; Pierce v. C. H. Bidwell T. Co., 153 Mich. 323, 116 N. W. 1104), which at the time of the delivery he knows to be imminently dangerous to the life or limb of any one who may use it for the purpose for which it is intended, is liable to any one who sustains injury from its dangerous condition, whether he has any contractual relations with him or not. Except in so far as it follows the Schubert case, the doctrine as formulated by the court, however, is as peculiar to itself as it is unwarranted by the authorities it cites and opposed to the universally recognized rule. It regards Winterbottom v. Wright, supra, as announcing the general rule that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles, and the other cases in which liability may extend to strangers to the contract as constituting three classes of exceptions to the general rule.

At the outstart, the court fell into the same inaccuracy of conception and error of statement, which occurs in many ill-considered cases, of attributing to Winterbottom v. Wright and allied cases a force and effect which, although sometimes set forth in their syllabi, are unjustified by the facts in issue and are disapproved by the English jurisprudents themselves. This has previously appeared. The fact of the reiteration of the misconception does not serve to convert what. is not true into truth, but serves rather to illustrate the persistence of error. The classification of the so-called exceptions fails, because the enumerated classes are neither exhaustive nor mutually exclusive. But the fallacy in the reasoning of the court lies deeper. The truth is that one principle of law applies to cases in which the facts show that the duty is confined to parties to a contract, and that another principle of law applies to those cases in which additional facts appear which are in law sufficient to create a duty to third persons who are strangers to the contract, and to show damage as a proximate consequence of the violation of that duty. Different rules are invoked, because different cases involve different facts. Either principle of law may be the rule; neither is the exception.

It would be a work of supererogation to discuss the authorities, English or American, generally, on this subject. They are familiar, and will be found collated and stated with sufficient definiteness in almost every standard work of reference.

3. This case is specifically ruled for the plaintiff by Pennsylvania Steel Co. v. Elmore & Hamilton C. Co. (C. C.) 175 Fed. 176, which involved damage to a third person consequent upon disintegrated piers of a bridge. The same accident was involved in Casey v. Wrought Iron B. Co., 114 Mo. App. at page 47, 89 S. W. 330. Mr. Justice Johnson said: "The facts which the evidence tends to establish, that the structure was so defective as to be essentially and imminently dangerous to the safety of others; that the defects were so hidden or concealed that a reasonably careful inspection would not have disclosed them and the danger resulting from them, and that these things were known to the defendant, but not to the commissioners, left the liability of the defendant where it would have been had there been no acceptance. The flagrant character of the negligence

and its potentiality, coupled with its concealment, amounted to a deception practiced upon the commissioners. There is no righteous principle upon which the obligation imposed by duty upon the contractor may be cast off under circumstances such as these."

The cases in defendant's brief in which a third person not a party to a contract has been unable to recover from the builder of a bridge damages consequent upon negligent or defective construction, are not significant, namely: Mayor v. Cunliff, 2 N. Y. 165; Salliotte v. Bridge Co., 122 Fed. 378, 58 C. C. A. 466, 65 L.R.A. 620; Williams v. Stillwell, 88 Ala. 332, 333, 6 South. 914; Lee v. Yarbrough, 85 Ala. 590, 5 South. 341; Marvin v. Ward, 46 N. J. L. 19; Mann v. Chicago, 86 Mo. 347; Styles v. Long, 67 N. J. L. 413, 51 Atl. 710; Id., 70 N. J. L. 301, at page 303, 57 Atl. 448; Smith v. Pennsylvania, 201 Pa. St. 131, 50 Atl. 829; O'Loughlin v. County, 56 Pa. St. 62. These cases involved a state of facts to which the rule supposed to have been announced by Winterbottom v. Wright applies. In none of them was there shown that defendant furnished an instrumentality which was, and was known to be, imminently dangerous to the life or limb of persons who were invited to use them and a concealment of this dangerous condition. They are, therefore, not in point. Defendant has also laid great stress on Roddy v. Missouri, 104 Mo. 234, 15 S. W. 1112, 12 L.R.A. 746, 24 Am. St. 333, and Heizer v. Kingsland, 110 Mo. 605, 19 S. W. 630, 15 L.R.A. 821, 33 Am. St. 482. It will appear from the most casual inspection that these cases do not rule the present controversy for defendant. 1 Beven, Negligence, 56; Huset v. J. I. Case T. M. Co., supra. On the contrary, plaintiff's contention is in a large measure sustained by Young v. Waters-Pierce Oil Co., 185 Mo. 634, 84 S. W. 929, in which defendant was held liable to a stranger to the contract for damages consequent upon its negligence in running a pipe from its tank on the right of way of a railroad.

4. The facts bring the case at bar within the rule of liability. The record contains abundant and convincing evidence that the bridge was so negligently constructed that it was practically certain to collapse soon after its use by the public. There was abundant testimony tending to show the soil, on which the piers of the bridge

rested, was a black, soft earth, a tough, sticky substance, not very hard, easily penetrated with a shovel. The materials, of which the cement used in the foundation for the piers and in the piers was made, were improper. The rock was soft, and did not stand exposure when lying in the sand. The sand was "kind of dust and small shale rock, quicksand mixed with silt and mud." It was not screened. The silt which was mixed with it was so fine that, when wet, it was practically a liquid in itself. The effect of its presence was to prevent proper bond. A witness testified: "The southeast pier was filled with sand, twigs, and leaves, with a slush of cement thrown on top. The contents were perfectly loose, and ran out where the tube was broken. There was concrete between the layers. I dug with my hands for a foot through sand and dirt." Another witness testified: "I probed down into the foundation of the southwest pier on the south side of the creek with an iron rod, and ran it right down through the foundation something like eight or ten feet. * * * "

It was not material that the county surveyor had told the contractor where to find the rock and sand. This was not logically more significant than if he had referred the contractor to a dealer in supplies. It did not exonerate, or tend to exonerate, defendant's agent in choosing and using improper materials. There was, moreover, an abundance of testimony that the methods of working, for example, the grouting method under water, tended to make it impossible to construct a firm and reliable foundation. Taken as a whole, both the materials and the methods of use tended to "invite disaster." An examination of the foundation showed that the result of the use of the materials used, by the methods employed, was obviously and certainly dangerous. There was much evidence of this tenor, and to the effect that the fall of the bridge was caused by the observed settlement of the foundation.

There is some doubt whether the charge of the court limited the question of defendant's negligence to the foundation of the bridge alone, or permitted inquiry as to negligence concerning such foundation and the piers also. The evidence entitled plaintiff to have the jury consider the charge of negligence as to both the piers and the foundation touching the earth. But if the charge be regarded as

limiting defendant's negligence to the southeast foundation, supporting the southeast double pier, the record clearly justified the verdict of the jury on defendant's negligence.

Defendant's knowledge of the danger created by its negligence in the construction of the foundation is clear. It selected and combined the materials. How it could have avoided knowing the character of the underlying soil, and of the imperfect materials used, and the improper methods employed in the construction of the foundation, or the foundation and the piers, does not appear. Defendant denies its negligence; but we are bound by the verdict of the jury. Defendant "ought to have known" of the danger it thereby created, in the sense that a man of ordinary prudence "must have known" of it. The danger was obvious, and certainly followed defendant's own choice and use of materials. Cf. Pierce v. C. H. Bidwell T. Co., 153 Mich. 323, 116 N. W. 1104, at 1106. Defendant "presumably knew." Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 179, 29 Sup. Ct. 270, 53 L. Ed. 453. And see Berger v. Standard, 126 Ky. 155, 103 S. W. 245, 11 L.R.A.(N.S.) 238. The jury was justified in imputing actual knowledge to the defendant. Nor did that knowledge rest upon defendant's mere failure to exercise reasonable care in ascertaining the dangerous condition. Cf. Lebourdais v. Vitrified, 194 Mass. 341, 80 N. E. 482. The charge of the trial court as to defendant's knowledge was, we have concluded, without reversible error upon its construction as a whole.

That dangerous condition was concealed—so far as the foundation was concerned, by the waters above it; so far as the "rottenness of the cement in the piers," by the iron castings, if the piers be regarded as involved.

The resulting instrumentality was not only extremely and imminently baneful, but it was almost inevitably lethal. If the bridge should fall while, or because, it was being used, death would be probable, and damage certain. If it should fall of its own weight during the night, it would operate as a most dangerous trap. This case comes within the rule of liability, restricted however much that rule may be by the demands of expediency or of principle. The jury was justified in finding that within a short time after use the bridge

must fall, that the use of the bridge meant destruction and probable death, that plaintiff was one of the class of persons by whom it was contemplated that the bridge would be used, and that he used the bridge in the manner intended and with ordinary care.

Defendant has laid great stress on that alleged fact that this suit was for "ordinary" or "plain" negligence, and for nothing more. "The case was not tried upon the theory of deceit, nor was the jury charged upon that theory, nor was there the slightest proof of fraud, falsehood, or deceit or knowledge." There is no merit in the contention. Plaintiff sued in negligence. His complaint was, we think, sufficient as against objection made after verdict. That in addition to showing its initial negligence, plaintiff adduced proof of facts sufficient to impose upon defendant a duty to take care, for the violation of which plaintiff was entitled to recover consequent damages, in no wise tended to change the nature of his cause of action. In the absence of such proof, he could not have recovered. The trial court charged correctly on this view of the facts proved.

It is not significant nor inconsistent that in some authorities the facts justified the submission of a given case essentially upon the doctrine of deceit. It does not at all follow that there might not be a recovery for negligence in the absence of fraud. At the one extreme negligence and fraud bear no resemblance. They approach each other, however, until, at the other extreme, there is substantial identity. The action of deceit must, however, be based upon fraud, and not on merely negligent misrepresentation. Derry v. Peek, 14 A. C. 337. The distinction between fraud and negligence, so far as the liability to third persons not parties to the agreement, will be found clearly stated in Le Lievre v. Gould, [1893] 1 Q. B. D. 491, overruling Cann v. Willson, L. R. 39 C. D. 39. That in this class of cases negligence may be actionable, although fraud is not shown, has previously appeared. Defendant has, however, especially urged upon our attention Collis v. Selden, [1868] L. R. 3 C. P. 495. Properly interpreted, that case is not inconsistent with the view here expressed. Grove, J., in Elliott v. Hall, [1885] 15 Q. B. D. 1320; Clerk & Lindsell, Torts (Can. Ed.) 474.

The cause of the catastrophe was for the jury. Defendant urges:

The conceded physical facts show that the bridge did not collapse as plaintiff claims, but was caused to buckle by an end pressure from a land connection made by the county with the bridge; for this pressure, the bridge builder was not in any event responsible; it must necessarily have come from the unskilful and unscientific manner in which heavy dirt fills were placed against the bridge structure, not by defendant, but by the county. It would serve no useful purpose to discuss the conflicting evidence on this point. The question of cause in such a case is naturally one of fact. In this case there was abundant evidence to justify the instructions by the trial court on this point. We must affirm its rulings.

Defendant has not objected to the amount of the verdict, but has urged other assignments of error, including some rulings on evidence. We have examined them all, and have concluded that none of them justify reversal, or more than this reference.

Affirmed.