## CRAINE v. OLIVER CHILLED PLOW WORKS.

(Circuit Court of Appeals, Ninth Circuit.    May 1, 1922.)

No. 3816.

1. Negligence ⟨≈⟩20—Shipper of dangerous machine held negligent as to carrier's employé.

In a complaint for injuries to a ship employee while handling a potato digger, allegations that the defendant manufacturer shipped the machine without removing therefrom sharp knives, which were concealed from view, and without guarding those knives, or informing the carrier of the danger, *held* to show the machine was so inherently dangerous as to impose a liability on the shipper independent of any contract relation with the injured employee.

2. Negligence ⟨≈⟩111(3)—Intervention of independent cause between negligence alleged and injury is matter of defense.

The intervention of a failure of the carrier to warn its employees of the danger of handling a machine shipped by defendant ·as an independent cause of the employee's injury, while handling the machine, is a matter of ,defense.

3. Negligence ⟨≈⟩56(1)—Shipment of dangerous machine held proximate cause of injury to carrier's employee.

The negligence of a shipper in delivery for shipment of a machine on which there were concealed knives, not guarded to protect those who handled the machine, without warning to the carrier of the character of the shipment, is the proximate cause of the injury to· an employee of the carrier while handling the machine.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by Harry Craine against the Pacific Steamship Company and the Oliver Chilled Plow Works to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant Steamship Company. From a judgment dismissing the action as against the Oliver Chilled Plow Works, after that defendant's demurrer to the complaint was sustained, plaintiff brings error. Reversed, with directions to overrule the demurrer.

The action is against the Pacific Steamship Company and Oliver Chilled Plow Works to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant the Pacific Steamship Company on board its vessel the City of Topeka. It is alleged in the complaint that the defendant the Oliver Chilled Plow Works was the shipper of a potato digger by the City of Topeka; that said defendant placed the potato digger on the wharf where the ship was taking on a cargo of miscellaneous freight by the use of ship's appliances commonly used in loading freight; that the potato digger was constructed with knives and other sharp parts, which were concealed from view and were not observable; that in shipping the potato digger said defendant had negligently and carelessly failed to remove the knives and sharp parts, or to box or cover or shield the same, so that they would not have exposed persons engaged in handling the machine to the danger of cutting their hands while carrying the same into the hold of the ship, all of·

⟨≈⟩For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

which was well known to said defendant by properly inspecting the machine before shipment; that while plaintiff was engaged in carrying the potato digger across the floor of the hold of said vessel, as he was required to do, the fore and middle fingers of his left hand became caught in the knives and other sharp parts of the potato digger, causing the plaintiff to lose his said fingers, and he was damaged in the sum of $10,000 and in the further sum of $2,150.

The defendant the Oliver Chilled Plow Works demurred to the complaint on the ground that it did not state a cause of action against said defendant. The demurrer was sustained, and, no application being made by the plaintiff to amend the complaint, the action was dismissed as to the defendant the Oliver Chilled Plow Works. Plaintiff brings error.

Wm. P. Lord and Arthur I. Moulton, both of Portland, Or., for plaintiff in error.

Oglesby Young and George A. Pipes, both of Portland, Or., for defendant in error.

Before ROSS, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The defendant the Oliver Chilled Plow Works contends that there was no contractual relation or direct privity between the plaintiff and that defendant, imposing upon the latter the duty of warning the plaintiff of the concealed danger incident to the handling of the machine in the usual manner in storing it on board the ship. The absence of contractual relations between the plaintiff and the defendant the Oliver Chilled Plow Works and lack of privity between the parties are not denied, but the duty of that defendant to warn the plaintiff of the danger in handling the machine, as a duty to all persons so related to its carriage, is insisted upon by the plaintiff. It is further contended by the defendant Oliver Chilled Plow Works that its failure to warn the plaintiff of such concealed danger was not, under the circumstances, the proximate cause of the injury, but that the failure of the defendant the Pacific Steamship Company to inspect the machine and warn the plaintiff, as an employee of the latter, of such concealed danger, was the proximate cause of the injury.

Did the defendant the Oliver Chilled Plow Works, as the shipper of such a machine, owe a duty to the employees of the carrier to exercise reasonable care to see that the machine was in a reasonably safe condition for handling by the employees of the carrier? It is not alleged that the Pacific Steamship Company had notice of the concealed danger incident to the handling of the machine, or had reasonable cause to suspect that there was such concealed danger in the structure of the machine, or in its fitness for safe shipment.

In the Nitroglycerine Case, 15 Wall. (82 U. S.) 524, 21 L. Ed. 206, a box had been delivered to the defendants, composing the firm of Wells Fargo & Co., express carriers. The box contained no notice of its contents. The shipment was made in New York to be carried to San Francisco. The box was carried in the usual manner and delivered in the office of the defendants in San Francisco, where it exploded, killing a number of persons and injuring the premises occupied by the defendants, and other premises of the plaintiff leased to and occupied

by other parties. The box was found to have contained nitroglycerine. One of the questions the court was called upon to determine was whether the carrier was negligent in not requiring of the shipper notice of the contents of the box when it was offered for shipment, and its dangerous character. Mr. Justice Field, speaking for the court, held that it was not the duty of the carrier—

"to know the contents of any package offered to him for carriage when there are no attendant circumstances awakening his suspicions as to the character, that there can be no presumption of law that he had such knowledge in any particular case of that kind, and that he cannot accordingly be charged, as a matter of law, with notice of the properties and character of packages thus received. * * * The defendants, being innocently ignorant of the contents of the case, received in the regular course of their business, were not guilty of negligence in introducing it into their place of business and handling it in the same manner as other packages of similar outward appearance were usually handled."

In the case of Parrott v. Barney, 1 Sawy. 423, 18 Fed. Cas. 1236, No. 10,773 (the Nitroglycerine Case in the lower court), Judge Sawyer reviews the authorities upon this question very fully and says:

"There was no negligence under the circumstances, in not inquiring as to the contents of the package. The defendants were acting in the ordinary course of their business. It was a culpable violation of duty on the part of the owner to deliver a dangerous article exhibiting no external indications of its real character, without informing them as to the danger. In the exercise of his lawful rights, every man has a right to act on the hypothesis that every other person will perform his duty and obey the law; and in the absence of any reasonable ground to think otherwise, it is not negligence to assume that he is not exposed to a danger, which can only come to him through a disregard of law on the part of some other person. Jetter v. N. Y. & H. R. R. Co., 2 Keyes [*48 N. Y.] 154; Earhart v. Youngblood, 27 Pa. St. 332; Deyo v. N. Y. Cent. R. R. Co., 34 N. Y. 10, 11; Curtis v. Mills, 5 Car. & P. 489."

In the leading English case of Brass v. Maitland, 119 Eng. Rep. 940, 944, Lord Campbell, C. J., said:

"It would be strange to suppose that the master or mate, having no reason to suspect that goods offered to him for a general ship may not safely be stored away in the hold, must ask every shipper the contents of every package. If he is not to do so, and there is no duty on the part of the shipper of a dangerous package to give notice of its contents or quality, the consequence is that without any remedy against the shipper, although no blame is imputable to the owners or those employed by them, this package may cause the destruction of the ship and all her crew and the lives of all who sail in her."

[1] We are not, however, determining the sufficiency of the complaint to state a cause of action against the Pacific Steamship Company. That question is not before us. We are dealing with the single question: Does the complaint state facts sufficient to constitute a cause of action against the defendant the Oliver Chilled Plow Works? That defendant contends substantially that the machine was not so imminently or inherently dangerous as to impose a liability upon the shipper independent of contract. The complaint alleges the fact that plaintiff was injured by handling the machine shipped by the Oliver Chilled Plow Works and that the dangers incident to such handling were concealed from view and were not observable; that the knives and other sharp parts had not been covered, guarded, or removed, and that plaintiff

was not informed of such danger. We think this statement is sufficient to constitute a liability independent of contract, subject, however, to the determination of the next question.

[2, 3] It is next contended by the defendant the Oliver Chilled Plow Works that under the rule of proximate cause the complaint states facts sufficient to introduce the defendant carrier as an independent agent between the shipper and the plaintiff, whose failure to warn the plaintiff of the danger incident to the handling of the machine was the proximate cause of the injury. This contention is based upon a mere inference. If it is a fact, it is a matter of defense for this defendant. It was not stated in plaintiff's complaint and he was not required to do so. But, assuming that such an inference might be drawn, or that the pleadings might be made to present such a defense, what, then, would be the application of the rule of proximate cause?

This question has been before the courts in many cases, arising in a great variety of relations between the parties; but we shall not attempt to state the conclusions of the court in any except in such cases as are of admitted authority and applicable to the facts stated in the complaint before us. In Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, Mr. Justice Strong, delivering the opinion of the Supreme Court, said (94 U. S. on page 474, 24 L. Ed. 256):

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. Scott v. Shepherd, 2 W. Bl. 892. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In the later case of Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, the same learned justice said (95 U. S. on page 130, 24 L. Ed. 395):

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

The court then quotes from Mr. Phillips in his work on Insurance as follows:

"The maxim 'causa proxima spectatur' affords no help in these cases, but is, in fact, fallacious; for if two causes conspire, and one must be chosen, the more scientific inquiry seems to be, whether one is not the efficient cause, and the other merely instrumental * * * or the consummation of the catastrophe."

The court quotes further:

"In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster. * * * The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss."

The English case of Farrant v. Barnes (1862) 11 C. B. N. S. 553, 142 Eng. Rep. 912, is very much in point. The action was to recover damages for an injury sustained by the plaintiff from the breaking of a carboy labeled as containing "acid," without any further identification. The carboy in fact contained nitric acid, an exceedingly corrosive and dangerous liquid. While the plaintiff was carrying the carboy, part of the contents escaped, and, flowing over the plaintiff, injured him. The original producer and shipper was the defendant Barnes, whose foreman delivered the carboy to one Russell, who delivered it to the plaintiff. The latter was the servant of Russell, the carrier. The carboy was to be carried to its destination according to the accustomed course of business. Erle, C. J., said:

"The application to the plaintiff being an application to take charge of and to carry and deliver a dangerous article, it was the duty of the defendant (the shipper), who knew the danger, to take care that the dangerous character of the article should be made known to all persons who were to be concerned in the carriage of it."

Willes, J., was of the same opinion. He said:

"A person who gives another dangerous goods to carry, goods which require more care and caution than ordinary merchandise, and which are likely in the absence of such caution to injure persons handling them, is bound to give notice of their dangerous character to the party employed to carry them, and is liable for the consequences which are likely to ensue from the omission to give such notice."

After referring to cases supporting this doctrine, the court continues:

"Where a person employs another to carry an article which from its dangerous character requires more than ordinary care, he must give him reasonable notice of the nature of the article, and if he fails to do so he is responsible for the probable consequences of his neglect."

This case has been cited as an authority in this country in a number of cases. In Schubert v. Clark, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559, there is a review of the leading American authorities upon the subject and a striking application of the principle of liability of the producer or manufacturer of an article who puts it on the market with a concealed danger and injury results therefrom. It was held, as stated in the syllabus of the case:

"If one engaged in the business of manufacturing goods not ordinarily of a dangerous nature, to be put upon the market for sale and for ultimate use, so negligently constructs an article that by reason of such negligence it will obviously endanger the life or limb of any one who may use it, and if the manufacturer, knowing such defects, and knowing that the same are so concealed that they are not likely to be discovered, puts the article in his stock of goods for sale, he is liable for injuries caused by such negligence to one

into whose hands the dangerous implement comes for use in the usual course of business, even though there be no contract relation between the latter and the manufacturer."

In the recent case of Bryson v. Hines (C. C. A.) 268 Fed. 290, 11 A. L. R. 1438, several federal and state authorities are cited where the question has been carefully considered. In answer to the defense set up in that case that "one injured by a dangerous or defective instrumentality in the hands of another person cannot recover against a third person who sold or furnished it, because of lack of privity of contract," the court said (268 Fed. on page 294, 11 A. L. R. 1438):

"But the opposite rule applies where the person selling or furnishing the article or instrumentality knows it to be dangerous, and also knows it will be used by other persons not aware of the danger; and this rule holds, even if the person to whom the article was sold knows the danger. Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 179, 29 Sup. Ct. 270, 53 L. Ed. 453; O'Brien v. American Bridge Co., 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. Rep. 503, and numerous authorities cited; Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303. In such case the additional tort of the buyer in concealing the danger does not cancel that of the seller; the person injured has his remedy against two wrongdoers, instead of one."

We think that under the weight of authorities the complaint states a cause of action against the defendant the Oliver Chilled Plow Works. The judgment of the District Court is accordingly reversed, with directions to overrule the demurrer.