## TOM v. NICHOLS-FIFIELD SHOE MACHINERY CO.

(Circuit Court of Appeals, First Circuit. July 10, 1914.)

No. 1062.

1. NEGLIGENCE (§ 136*) — DANGEROUS MACHINERY — LIABILITY OF MANUFACTURER—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

Where plaintiff's employer purchased a die-cutting machine from defendant to be set up and operated in his factory, and plaintiff while operating the machine in the course of his duty was injured by the sudden involuntary fall of the headpiece, due to a defect in the machine or a failure to properly adjust the same when it was being set up by defendant's employés shortly before the accident, plaintiff having no knowledge that the head piece was liable to fall when his foot was not on the treadle, whether defendant was negligent in constructing and setting up the machine, whether such negligence, if any, was the proximate cause of plaintiff's injury, and whether plaintiff was himself negligent, were for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277-353; Dec. Dig. § 136.*]

2. NEGLIGENCE (§ 27*)—DANGEROUS MACHINERY—CARE REQUIRED.

Where defendant rebuilt and sold to plaintiff's employer a die-cutting machine knowing that it would be operated by plaintiff's employés, defendant was bound to exercise reasonable care to make the machine safe, and was liable for injuries to plaintiff while operating the machine caused by a failure to exercise such care.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by Jacob Tom against the Nichols-Fifield Shoe Machinery Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Wendell P Murray, of Boston, Mass. (Charles F. Smith, of Boston, Mass., on the brief), for plaintiff in error.

Walter Bates Farr, of Boston, Mass., for defendant in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This is an action for personal injuries sustained by the plaintiff (plaintiff in error), while in the employment of Habib Tom and engaged in operating a die-cutting machine, sold and delivered by the defendant (defendant in error) to and set up by it in the factory of said Tom in contemplation of its being operated by the plaintiff.

The declaration contains three counts. The defendant demurred to the declaration, and the demurrer was overruled. It was held, on the authority of Huset v. Chase Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, that the second count stated a good cause of action, and the case went to trial upon that count, which reads as follows:

"And the plaintiff says that at Boston aforesaid, on or about June 12, 1907, the defendant company was engaged in business as a manufacturer of, re-

pairer of, and dealer in, certain sorts of machinery; that in the course of said business it then and there represented to one Habib Tom, a ·manufacturer of certain articles of wearing apparel, that a certain lining-cutter machine then and there owned by the defendant, and forming part of its stock of machinery in which it was then and there dealing, which machine was to be run by power, was suitable for use, and intended for use, in cutting the sort of material used by said Habib Tom in the course of his business as manufacturer aforesaid; and the defendant then and there further represented to said Habib Tom that said lining cutter was then and there in all its parts sufficient and adequate for the proper running and operation of said machine with safety to said Habib Tom, his servants or agents or operator, and for the proper performance of the work of cutting such material in his manufactures aforesaid; and the defendant further then and there represented to said Habib Tom that for a certain consideration then named it would transfer and deliver said machine in the conditions represented to said Habib Tom in the latter's factory in said Boston, and that it, the defendant, would also set said machine up in good workmanlike manner in said factory, in the condition aforesaid, in such way as not to endanger or harm said Habib Tom, his servants or agents or operator, while said Habib Tom, his servants or agents or operator, were properly using the same; and the plaintiff says that thereupon, believing the same to be true, and relying upon said representations, and acting thereon, said Habib Tom then and there paid and delivered to said defendant the consideration hereinbefore referred to, and in return for said consideration the defendant delivered to said Habib Tom in his said factory said machine; and, further, the defendant thereupon set said machine up in said factory, having done which, the defendant represented to said Habib Tom that said machine was then and there in all its parts as represented as aforesaid, and that it was then and there set up in said factory as represented as aforesaid that it would be there set up, and thereupon, and relying upon all said representations aforesaid, and believing the same to be true, and having reasonable cause to believe the same to be true, acting thereon, said Habib Tom set the plaintiff to work operating said machine in said factory, and the plaintiff says that at the time he was so set to work, and while the plaintiff was operating said machine, he was in the employ of said Habib Tom as his servant for that purpose, and he then and there had no knowledge of any defect in said machine, or in the way in which it was so set up by the defendant, and that while so operating said machine in a proper manner, and while the plaintiff's left hand and forearm were extended over a quantity of such material as aforesaid then in said machine, arranging the knives thereon for the purpose of cutting said material in said machine, and while the plaintiff was exercising due.care, the top or head of said machine suddenly dropped on the plaintiff's said hand and forearm, and then and there caught said hand and arm between said headpiece of said machine and said knives, and then and there caused the plaintiff's said hand and arm to be so cut and mangled and bruised and injured, and so held said hand and arm imprisoned in said machine, that said hand and forearm thereafter had to be and were amputated from the plaintiff, and the plaintiff says that said weight or headpiece was caused or permitted so to fall then and there, and hold the plaintiff's hand and arm imprisoned as aforesaid, because said machine was not, when delivered and set up by the defendant in said factory, in the condition by it represented as aforesaid, and because said machine was not delivered and set up by the defendant in such a way as to permit the plaintiff, as servant of said Habib Tom as aforesaid, to properly operate the same as aforesaid without danger of the harm aforesaid happening to the plaintiff, and because at the time the defendant completed its delivery and setting up of said machine aforesaid there were insufficiencies in said machine, certain of its parts were inadequate to control said headpiece and prevent its dropping as aforesaid, which insufficiencies in said machine, and inadequacy of its parts to control said headpiece and prevent its so dropping, rendered said machine imminently dangerous to the life and limb of the plaintiff operating the same as aforesaid, all of which facts were at the several times aforesaid known to the defendant, but were unknown to and concealed

from said Habib Tom and the plaintiff, and the defendant negligently and carelessly failed then and there to safeguard or warn the plaintiff against said imminent danger and injury aforesaid, all to the great and permanent injury of the plaintiff, and causing the plaintiff great pain and loss of time and money."

At the close of all the evidence a verdict was directed for the defendant, and the plaintiff excepted. No question is here raised as to the second count stating a good cause of action. The only question is whether the evidence was sufficient to warrant the submission of the case to the jury.

The defendant contends that there was no evidence warranting the jury in finding: (1) That the plaintiff's accident was occasioned by a defect in the machine that existed at the time it was sold and installed; or (2) that the defect in the machine was one that rendered it imminently dangerous to life and limb of the plaintiff; or (3) that the defendant knew of the defect and concealed his knowledge of it from the employer; or (4) that the plaintiff was in the exercise of due care.

The machine consisted of a wooden bed, upon which the operator placed the material to be cut. Having spread out the material upon the bed, steel dies were placed upon it, and were driven through the material by a blow from the headpiece or beam, the fall of which was accentuated by power. The power was applied and shut off by means of a treadle, which, when pressed down, caused a friction cone pulley to be engaged by a belt-driven pulley that inclosed it. When the pressure was released, the treadle was raised by springs, and the cone of the pulley was withdrawn, shutting off the power. The machine was also equipped with a brake, which consisted of an iron ring, the ends of which were kept apart by a square plug. Turning this plug sideways forced the ends of the ring farther apart, so that the ring was expanded against the inside of the flange of the pulley, checking the motion. The construction was such that when the treadle was down and the power applied the brake was released; and when the treadle was raised and the power shut off the brake was applied. The headpiece weighed about 600 pounds, and when the power was shut off and the headpiece was up it was held in position only by the brake. When the treadle was operated it rocked a shaft to which an arm was attached. This arm was connected with a brake lever by a link or screw, which was a threaded rod supplied with nuts, the end of which passed through the eye of the brake lever. At the opposite end of the brake lever was the square plug which expanded the ring against the inside of the flange of the pulley, as above stated. The treadle was held up by two strong spiral springs, the force of which, when the foot was taken off the treadle, caused the shaft, and the shaft arm connected with it, to be rocked away from the operator, and the end of the screw link to be thrust farther through the eye of the brake lever, bringing a rubber plug on the link hard against the brake lever, causing the lever to turn the square plug sideways and expand the ring and apply the brake. This rubber plug was cylindrical in shape, and inclosed the link for about an inch and a half. It had on one side of it two nuts, which were locked together, and on the other side was the brake lever, through the eye of which the end of the link passed. When the operator pressed the treadle

down with his foot the shaft and its arm would rock towards the operator, tending to withdraw the link from the eye of the lever. If the end of the link were withdrawn from the eye of the lever when the treadle was pressed down, then when the treadle was raised again, the connection between the arm of the shaft and the lever having been broken, the brake would not be applied, and there would be nothing to hold the beam up.

[1] The evidence tended to prove that the plaintiff was injured by the headpiece or beam falling and catching his hand and arm between it and one of the dies, while he was smoothing the cloth and placing the dies preparatory to operating the machine; that he had not placed his foot upon the treadle, the treadle being up at the time, and that he had reason to believe the headpiece would remain up until the treadle was again pressed down; that the link or screw was too short to prevent its being drawn through the eye of the lever, unless two nuts or some other sufficient means were placed upon the end of the link to prevent its being drawn through, or, if the link was not too short, that the arm of the shaft was improperly adjusted upon the shaft so that it drew the link or screw too far back when the treadle was pressed down, causing the link or screw to be withdrawn from the eye of the lever and disconnecting the brake; that at the time the machine was set up there was but a single nut upon the end of the link, and that no change in this respect was made down to the time of the accident; that in the operation of the machine, in the natural and expected course of events, this single nut would be and was backed off the end of the link, allowing it to be withdrawn from the eye of the lever; that on the succeeding operation of the machine, when the head beam was up, the link being withdrawn from the eye, so that the brake would not work, the beam fell, and injured the plaintiff; that the reason the head beam did not immediately fall upon being raised was that it was temporarily held by cams or eccentrics on a dead center, and shortly afterwards, being released therefrom by the jar of the motor on the floor, the beam fell; that the difficulty with the brake could and should have been obviated in one of the following three ways: By making the link so long that it could not be drawn through the eye when the treadle was pressed down, or by readjusting the arm on the shaft so that it could not draw the link back far enough to release it from the eye, or by locking the nut with a check nut upon the end of the link so that it could not be backed off and allow the link to be withdrawn from the eye. Although the machine was not new at the time it was purchased of the defendant, it had been operated but a short time, and was represented to be in perfect condition and as good as new. All its parts had been gone over and rebuilt by the defendant, and it knew when the sale was made that the machine was to be set up in the purchaser's factory, where he employed a number of people, and was to be operated by his men.

It also appeared that it was arranged the defendant should set up the machine in the factory, ready to be operated; that a day or so after the purchase was made the defendant delivered the machine at the factory, set it up, operated it, and notified the purchaser that it was ready for use; that the purchaser himself operated the machine the

first two or three days, during which time the beam came down, because of the rubber plug splitting and coming off the link; that the defendant put on a new rubber plug; that thereafter the machine worked perfectly down to the time of the accident to the plaintiff, which occurred some four weeks after the sale was made; that at that time the single nut worked off the end of the link and allowed the link to be drawn through the eye of the lever; that this was due either to the want of a check nut to lock the nut on the end of the link, or to the link being too short, or to the brake mechanism between the lever and the shaft being rendered too short by the way in which the arm was adjusted upon the shaft; and that the defendant knew this was an unsafe and dangerous way to construct or set up the machine, and that no one would discover it but a skilled mechanic, and then only after a thorough examination.

We think the jury could reasonably have found from the evidence that the machine was defectively constructed or set up; that the head beam was liable to fall at any minute, and that the machine was therefore imminently dangerous to any one who should undertake to operate it in the way it was designed to be used; that, constructed as it was, with a single nut upon the end of the link, it was a mere trap; that the defendant knew it was to be operated by the purchaser's employés, of whom the plaintiff was one; that the defendant, having overhauled the machine and set it up, knew its condition, and that it was dangerous, and not only concealed the situation from the purchaser and his employés, but lulled them into security by giving them to understand and believe that the machine was properly constructed and set up. It could also be found that the plaintiff was in the exercise of due care. Although he knew it was dangerous to place his hand on top of the dies when his foot was on the treadle, he did not know that the head beam was liable to fall when his foot was not on the treadle, and reasonable men might fairly conclude that he was not negligent in what he did.

[2] We are also of the opinion that the circumstances disclosed by the case show that the defendant owed the plaintiff a duty to exercise care in setting up the machine, and that this duty did not arise out of the contract of sale between the defendant and Tom, but out of the relation existing between the plaintiff and the defendant, and irrespective of the contract of sale. "The law governing actions for negligence has for its foundation the rule of reasonable conduct." That rule "necessarily includes two persons, or one person and some right or property of another. It has to do with one's acts in reference to the person, property, or rights of another. It is a rule of relation. If there be no relation there is nothing upon which the rule can operate." Garland v. Railroad, 76 N. H. 556, 86 Atl. 141, 46 L. R. A. (N. S.) 338, Ann. Cas. 1913E, 924. When, however, one knows or has reason to believe that his conduct may affect injuriously the person or property or rights of another, then a duty arises requiring him to exercise reasonable care to see that his acts do not result injuriously to the person or property or rights of that other. So in this case, when the defendant set up the machine in the factory, knowing or having reason to anticipate that the plaintiff and his fellow employés were to operate

it, the law imposed a duty upon the defendant, with relation to the plaintiff and these men, to exercise reasonable care in setting up the machine, and rendered it liable in damages for a breach of the duty in case one of them was injured while operating the machine and as a result of its having been negligently set up. Gill v. Middleton, 105 Mass. 477, 479, 7 Am. Rep. 548; Baird v. Daly, 57 N. Y. 236, 15 Am. Rep. 488; Devlin v. Smith, 89 N. Y. 470, 478, 42 Am. Rep. 311, Pittsfield Co. v. Shoe Co., 71 N. H. 522, 53 Atl. 807, 60 L. R. A. 116; Id., 72 N. H. 546, 58 Atl. 242; Hubbard v. Gould, 74 N. H. 25, 28, 64 Atl. 668; Dustin v. Curtis, 74 N. H. 266, 268, 269, 67 Atl. 220, 11 L. R. A. (N. S.) 504, 13 Ann. Cas. 169; Burnham v. Stillings, 76 N. H. 122, 123, 79 Atl. 987.

Whether the defendant's act in negligently setting up the machine was the proximate cause of the plaintiff's injury was a question of fact for the jury, there being evidence from which such a conclusion might reasonably be drawn. It appeared that the defendant's men went to the factory of the purchaser, saw the place where the machine was to be operated, saw that a number of men, including the plaintiff, were employed there, and knew that they were likely to be called upon to run the machine. Under these circumstances, it could not be said as a matter of law that the defendant had no reason to anticipate that the plaintiff would be set to work on the machine, or that the injury which he received was not the proximate result of its negligence in improperly setting it up. Ela v. Cable Co., 71 N. H. 1, 3, 51 Atl. 281.

The judgment is reversed, the verdict is set aside, the case is remanded to the District Court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers his costs of appeal.