### TEXAS DRUG CO. v. CADWELL.*
### (No. 8602.)

(Court of Civil Appeals of Texas. Dallas. Jan. 28, 1922. Rehearing Denied Feb. 25, 1922.)

1. **Appeal and error ⬅1001(1)—Finding on special issues supported by evidence not disturbed.**

Finding of the jury on special issues will not be disturbed on appeal, where supported by evidence.

2. **Appeal and error ⬅996—That different conclusion might have been reached from evidence will not authorize reversal.**

The fact that there was other evidence from which a different conclusion could have been reached will not authorize the appellate court to substitute such conclusion for the jury's verdict, the evidence being broad enough to justify an honest difference of opinion in the minds of reasonable men.

3. **Negligence ⬅27—Seller of ammonia not relieved of liability for injuries to purchaser's employee by employer's failure to examine consignment.**

A wholesale drug company, which delivered an improperly filled and corked bottle of concentrated ammonia to a retail drug store, where fumes escaped from it while being handled by an inexperienced employee, was not relieved of its liability for injuries to the latter by his employer's failure to examine the consignment, of which the bottle was a part, to ascertain whether the company had discharged its duty incident to filling an order for an article known to be inherently dangerous.

4. **Negligence ⬅140—Evidence held not to raise issue of employer's negligence as cause of clerk's injuries by ammonia fumes.**

In an action against a wholesale drug company for injuries to a drug clerk from the escape of ammonia fumes from an improperly filled and corked bottle of concentrated ammonia, where the evidence did not disclose who received the consignment, including the bottle, or that plaintiff's employer knew of the negligent bottling, the court properly refused to submit the issue as to the employer's liability for failure to examine the consignment before permitting his employee to handle the bottle.

5. **Negligence ⬅27—Seller of dangerous article must use ordinary care to protect purchaser's employees.**

A wholesale drug company, which delivered a bottle of concentrated ammonia to a retail drug store, owed a legal duty, not only to the general public, but to a clerk in the employ of the purchaser, who was not a pharmacist and whose eyes were injured by the escape of fumes from the bottle resulting proximately from the fact that the bottle was improperly filled and insecurely corked.

6. **Trial ⬅351(2)—Judgment for plaintiff not equivalent to finding of negligence in particulars not included in plaintiff's requests.**

The entry of a judgment for plaintiff is not equivalent to a finding that defendant was negligent as to matters presented by the pleading and proof, but not submitted to the jury because no request was made therefor by defendant as provided by Rev. St. 1911, art. 1985, where plaintiff failed to request the submission of such issues, thereby abandoning them by acquiescence in the theory of the case as submitted by the court.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 12, 1922.

Action by Wm. J. Cadwell against the Texas Drug Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Crane & Crane, of Dallas, for appellant.

Marshall Thomas and Thompson, Knight, Baker & Harris, all of Dallas, for appellee.

VAUGHAN, J. Appellee instituted his suit in the trial court to recover damages alleged to have been sustained by him on account of certain personal injuries claimed to have been suffered through certain acts of negligence committed by appellant on July 16, 1919.

Appellee alleged in substance that on July 16, 1919, he was in the employ of Collins' Drug Store. That the defendant at such time was engaged in the wholesale drug business, including the sale of drugs, chemicals, and sundries to the retail drug stores of the southwest. That at that time the defendant company handled, compounded, and sold the retail trade a chemical designated and known as concentrated ammonia. That concentrated ammonia is an inherently dangerous, highly volatile, explosive chemical which, if permitted to come in contact with the human body, and particularly the eyes, will cause and produce serious, painful, and permanent injury, burn, and wound, all of which facts were well known to the defendant at the time of the wrongs complained of. That it was the duty of the appellant to employ and use care, skill, and diligence to limit the danger incident to the use of concentrated ammonia and to protect the public, including the appellee, from such danger. That in selling concentrated ammonia to a retail drug store, the appellant was advised and knew that it was necessary for the purchaser's employees to handle the bottle containing such chemical and that there was serious danger incident to such handling unless the purchaser and his employees were protected therefrom by the care, skill, and diligence of the seller. That on July 16, 1919, appellee's employer purchased from the Texas Drug Company a bottle of concentrated ammonia, and that upon the delivery of said ammonia it became and was his duty to receive and place same in position in said drug store. That acting in line with the duty incumbent upon him, he undertook to place same in its proper position in said drug store. That while engaged in such attempt the ammonia and gases formed therefrom exploded, forcing the cork stopper therefrom and causing the concentrated ammonia to come in contact with the appellee's face and eyes, thereby inflicting upon him painful and permanent injuries. That it was the duty of the appellant in the preparation, sale, and delivery of such a dangerous, volatile, and explosive chemical to exercise a high degree of care, skill, and diligence to protect persons who handle the same or come in contact therewith from the danger incident thereto.

Appellee then defined in his pleading appellant's duty in the premises and alleged that appellant in the preparation, sale, and delivery of said bottle of concentrated ammonia was guilty of negligence in the following respects and particulars, to wit: (a) In selling and delivering a bottle of concentrated ammonia, which was completely filled and in which there was no adequate space for expansion of gases, thereby increasing the hazard and danger of an explosion when the defendant, its servants, and employees, knew, or in the exercise of the care incumbent upon them should have known, the danger incident to such condition. (b) In placing a cork stopper in said bottle of concentrated ammonia, when the appellant, its agents, servants, and employees, knew or in the exercise of the care incumbent upon them should have known, that such cork stopper, unprotected, was inadequate and insufficient to prevent an explosion and the consequent damage and injury. (c) In failing to properly secure and fasten the cork stopper placed in the neck of said bottle of concentrated ammonia, by sufficient and adequate strip or band placed over the same and securely fastened to the neck of the bottle in such manner as to protect and hold in place such cork stopper, when the appellant, its agents, servants, and employees, knew, or by the exercise of the care incumbent upon them should have known, the necessity for such protection and support. (d) In failing to place a glass stopper in said glass bottle as a security and protection against explosion. (e) In failing to place a glass stopper in said bottle and in failing to protect and secure said glass stopper against explosion by placing over the same a strip or band securely fastened to the neck of the bottle. (f) In failing to employ and use reasonable and necessary safeguards and protection against an explosion. (g) In failing to give appropriate, timely, reasonable, and necessary notice and warning of the danger of an explosion, by writing or printing on said bottle, when the appellant, its agents, servants, and employees, knew, or in the exercise of the care incumbent upon them should have known, of the existence of such danger and the necessity of notice thereof to plaintiff and others handling same. (h) In preparing, selling, and delivering a bottle completely filled with concentrated ammonia, without securely and safely impounding same and protecting same against explosion. (i) In failing to so bottle, impound, and secure said concentrated ammonia so that same would not explode and injure persons handling same. (j) In so impounding and bottling concentrated ammonia, an inherently dangerous chemical, so as to cause the same to explode.

Appellee alleged that concentrated ammonia is more volatile and subject to explosion during weather such as exists in June, a fact

well known to the appellant, its agents and employees. That the appellant, its agents, servants, and employees, had notice, information, and knowledge, of each and all of the foregoing defects and acts of negligence, or in the exercise of the care incumbent upon them could have and should have acquired such notice, information, and knowledge, and had notice, information, and knowledge of the dangers incident to and relating thereto, or in the exercise of the care incumbent upon them could and should have learned of such dangers. That the explosion and consequent injuries and damages were the natural, reasonable, and probable consequences of each and all of the foregoing acts of negligence, and that such explosion and consequent injuries and damage were proximately caused by each and all of the foregoing negligent acts and omissions.

Appellant, in addition to a general demurrer, certain special exceptions, which it is not necessary to enumerate, and a general denial, pleaded specially that, if it was guilty of the acts of negligence alleged, which were not admitted but expressly denied, at the several times alleged in appellee's petition, and at the time of his alleged injury appellee was engaged as an employee in the drug business, that at said times he was thoroughly familiar with, or by the exercise of ordinary care for his own safety could have become thoroughly familiar with, all the dangers, if any, connected with or incident to the handling of ammonia water, or concentrated ammonia, especially in 'its bottled form; that at the time it was alleged he received said bottle of ammonia water and undertook to place same in its place in the drug store, he knew, or by the exercise of ordinary care would have known, that said bottle contained ammonia water and the extent to which said bottle was filled with ammonia water, and that said bottle was corked with a cork stopper, and that said cork stopper was not protected, or held in place by a strip or band; that in receiving and placing same in its position in the store, under the circumstances surrounding its delivery and receipt and the handling of same, he knew, or by the exercise of ordinary care would have known, that ammonia gas would have generated or formed therein, and would have probably produced a pressure sufficient to force out the stopper and cause the gas and ammonia to rush therefrom; that in total disregard of all these facts which were well known to him, or should have been known by him, appellee 'in utter disregard for his own safety, carelessly and negligently received said bottle and its contents and attempted to place same in the store with the part thereof containing the cork pointed toward and in close proximity to his face, although he knew, or by the exercise of ordinary care could have known, that the safe

and customary way to handle bottled ammonia is to hold it away from the body with the portion thereof containing the cork pointing away from the person handling the same; and that if any injury was sustained by appellee, such injury was the direct and proximate result of and due to his own negligence and his own acts as above alleged.

The following material facts 'were established on the trial of the case: Concentrated ammonia is an exceedingly volatile liquid gas. It is gas concentrated into a liquid form and is subject to evaporation. As it evaporates the acid fumes from it are very poisonous. They not only produce death, but they produce burns and blisters resulting in scar tissue and destruction of tissue. It has a tendency to go back to gas from evaporation. When it strikes the air it will evaporate very much like gasoline. It is explosive—within its own nature—within its own products. For that reason we have been taught to take extra precaution against its coming in contact with the air. There should be well-secured stoppers. An ordinary cork stopper should not be used. Ammonia water is ammonia gas dissolved in water. Water will dissolve ammonia in proportion to the temperature and pressure. Under normal atmospheric pressure, water, at practically 32 degrees Fahrenheit, will dissolve 1,150 times its volume of ammonia, and at 212 degrees Fahrenheit it will not dissolve any. As to the effect of heat, such as we have in the summer months in Texas, on concentrated ammonia, as the temperature rises, the amount of ammonia gas that water can dissolve becomes less and the consequence is it throws out gas, out of the solution.

In placing ammonia water in a bottle to dispense to the trade it is necessary, to insure safety to one handling it, to leave space of about 20 per cent. of the capacity of the bottle to allow space for expansion, using a strong bottle and a glass stopper so as to permit the expansion of the ammonia gas in passing from the liquid to the gaseous state. A bottle completely filled with concentrated ammonia not allowing space for volatilization, the chances are that the stopper will be blown out. If a space is left, the chances for explosion or the stopper being ejected are greatly lessened. That the difference in the efficacy and security of an ordinary cork stopper in a bottle and a glass stopper is that a glass stopper in a bottle is very hard to get out. In cold weather a cork stopper inserted tight in a bottle partially filled with concentrated ammonia will probably hold sufficient to retain the ammonia water in the bottle. The difference between cold and warm weather is the warm weather will cause the ammonia water to volatilize and cause the gas to pass off. When a glass stopper is turned in a bottle, it is very

tight, and that is one reason the authorities say it is necessary to have a strong bottle as well as a strong stopper.

Appellee was employed at Collins' Drug Store No. 3 on July 16, 1919, as a drug clerk. His duties were marking up and putting away goods and waiting upon the trade; had nothing to do with the prescription department; was not a pharmacist or a chemist. Prior to this time he had had experience as a sales clerk as a general front man to wrap up patent medicines and things like that. On July 16, 1919, there was a consignment of drugs and chemicals received at Collins' Drug Store No. 3 from the Texas Drug Company. The shipment came in about 12 a. m. or 1 o'clock p. m. Appellee was not there at the time, but came on duty on that day about 2 p. m.; that about 2:10 p. m. appellee started in to put away the above consignment of goods; that at the date of the injury appellee was 34 years of age; that he had worked in retail drug stores since he was 14 years of age in various capacities, including those of receiving clerk, in which capacity it had been his duty to receive goods and chemicals delivered to the store, and as an assistant manager of a retail drug store; that he had over 13½ years' experience in working in retail drug stores prior to his injury; that he had handled concentrated ammonia, or stronger ammonia water prior to his injury; that he was familiar with household ammonia, and knew that while it was much weaker than concentrated ammonia, or stronger ammonia water, household ammonia gives off a gas which causes the eyes to smart; that on the day of the injury a quart bottle, six or seven inches tall, labeled "Stronger Ammonia Water, 26 per cent., Texas Drug Company," was delivered at his employer's place of business, and it was his duty to place the cost mark thereon and place it on a shelf of the prescription case; that before picking the bottle up to place the cost mark thereon, he observed that the bottle was filled clear up to the neck with liquid, and that it contained an ordinary cork stopper, which was barely stuck in the neck and had not been forced in; that he had previously handled stronger ammonia water put up in bottles, and that in all his previous experience the bottles containing stronger ammonia water handled by him were only partially filled and always contained glass stoppers which were held in place with a gut skin drawn down over them and tied around the neck of the bottle; that he picked up the bottle by its base, with his left hand, with the neck thereof inclined away from him at an angle of 45 degrees, placed a sticker thereon, transferred it to his right hand, keeping the neck thereof pointing away from him, and, standing in an upright position, was turning to the left to place it on the shelf, and when he had turned fully

around the stopper came out of the bottle and the fumes and liquid therefrom struck him in that part of his face included in a circle drawn from the lower corners of his nose to include the outer corners of his eyes and extending to about the center of his forehead, injuring his left eye more severely than his right eye, and that neither his upper lip nor his nose nor any other part of his body was injured; that some of the fumes or liquid fell on a coworker who was from 2½ to 3 feet to his rear.

T. D. Culbreath, secretary-treasurer and business manager of appellant, testified to the following facts:

"As we have orders for concentrated ammonia from the city trade, we put it in bottles and label it and put in a cork stopper. We do not draw any concentrated ammonia into small bottles in advance of getting orders for them. We do not do that because ammonia will eat a cork stopper up. We might use a rubber stopper occasionally for the country trade because it will not eat up the rubber. Collins' Drug Store No. 3 is a 10-minute ride from our place. A man can go there in 10 minutes good fast walking. On July 16, 1919, it was the duty of Mr. Bush, who was then in our employ, to put up this package of ammonia to be delivered to the retail druggist. He has seven or eight men under him. We use no different bottles from any other bottle in delivering ammonia. The United States Dispensary is our Bible. We go by that and the United States Pharmacopeia. Let me read the paragraph from the United States Pharmacopeia you indicated there a while ago, which reads: ' * * * Stronger ammonia water should be kept in strong partially filled glass stoppered bottles in a cool place.' It should be kept in partially filled bottles to keep it from blowing up. It is not explosive, but it is volatile. The dispensary says to keep it in partially filled strong bottles. That means to keep it, to store it, and we do not store it. It would burst the bottle if you did not allow some space for the gas. The reason the United States Dispensary says to keep it in partially filled bottles is to keep it from exploding. They also say to keep it in a strong bottle, to keep the bottle from breaking. They also say to use a glass stoppered bottle. The retail stores keep theirs in a glass stoppered bottle. I knew when I sent that ammonia out that a man would handle it and put it in the shelf, and I thought a man would handle it that knew what he was doing. I knew it was dangerous, that there was a danger of explosion, when I sent that bottle out. Q. Did you put a label on there and a printed warning on there warning the man of that danger? Answer: Why should we do that? This ammonia was delivered by a driver in a wagon. I do not know whether the wagon had a top on it or not. The United States Dispensary says that in bottling ammonia it must be a partially filled bottle with a glass stopper and a strong bottle. That is what it says. * * * Everybody who works in the front end of a drug store is not necessarily a pharmacist; some of them are, and some are not. We knew that when we delivered that ammonia to Collins. The directions you read from the United States Dispensary are the fed-

eral government's directions as to how to handle ammonia. That is the way it is handled. I have been in the wholesale drug business 33 years, and we have never handled one like that and never will handle one as long as I live, because there is no danger attached to it to those men who know how to handle it. If concentrated ammonia gets in a man's eyes, it will hurt them. I knew that on July 16, 1919. We receive this water of ammonia in iron drums. We take it out of those drums and put it in what we call carboys, a very thick glass bottle around which we have a wooden box. On this day this ammonia water was delivered I don't know whether the boy went to Collins No. 3 first or whether he went to some of the other stores first. If he did not have a top on that wagon, that ammonia water would heat, and heating ammonia means danger. I knew that then and have known it all my life."

L. B. Mitchell, a witness for appellant, testified:

"I am with the J. W. Crowdus Drug Company as their chemist. Concentrated ammonia is continually giving off gas, and the more gas it gives off in the bottle the greater the pressure that will be exerted on the inside of the bottle. I have never heard of a cork blowing out of a bottle of ammonia when it was properly put in. I have never heard of a fresh cork blowing out of a bottle of ammonia. I have heard of them blowing out when a cork deteriorated and came loose. Ammonia is a caustic volatile alkali. It will go back into its gaseous state more readily in hot weather than cold. That is known by all chemists and all wholesale drug men, and when ammonia goes back to its gaseous state it is bound to expand. I know that after this gas comes off in the bottle it does expand and as it expands it increases the pressure. That pressure in turn operates on the bottle and on the cork in the bottle. We put a cork in a bottle of ammonia and take a mallet or some other something and drive the cork in. We do not put it in loosely; we put it in there securely and drive it in. We drive it in so securely that in taking it out the stopper is destroyed. The effect of ammonia water in coming in contact with the human eye is that it is caustic. It will burn. That is well known to wholesale druggists and chemists."

Jim Drake, a witness for appellant, testified to the following facts:

"Concentrated ammonia is a volatile liquid. Under proper conditions I never heard of it exploding. If the container was completely filled and if the stopper was not securely placed in it and it was exposed to too much heat, anything like that might do it now. If it is properly filled and not exposed to any unusual amount of heat, and a proper stopper in it, I do not think it would explode. It won't explode if the bottle is properly filled and has a proper stopper in it, but if it is exposed to a great amount of heat I think it might explode; under certain conditions it would. I guess it is explosive. Concentrated ammonia's liability to explode depends upon the extent to which it volatilizes and the space in which the gas can expand; that would determine its liability to explosion, I think. Anybody in the wholesale drug business ought to know that; I should think they would."

As to the extent of appellee's injuries, Dr. D. E. Compere testified as follows:

"As to the effect of concentrated ammonia water coming in contact with the eye, you might first put it coming into contact with the skin. Of course, the skin has more resistance than the eye; for that reason nature provided the eye with a skin covering. It will destroy the skin itself, although the skin is tough; it will destroy the skin and burn a hole in it; absolute destruction of tissue as well as blister, even in the lighter forms, if it comes in contact and is kept in contact with the skin; it will eat a hole; however, if it runs off, it may not eat a complete hole, but it will destroy the tissue and produce blistering and a burning. Now, then, multiply that many, many times, and you have the eye, which is, of course, sensitive, so much more sensitive, of course, than the skin. It is not constructed like the skin, with the resistance of the skin, and naturally with the eye the burn would be more severe, because, as I say, the delicacy of the tissues compared with the rough tough skin that it comes in contact with— I had occasion in July, 1919, to treat Mr. Cadwell's eye. He came to me on the 16th day of July, 1919. He was brought up there by Mr. Hurley, who was manager of Collins' Drug Store No. 3, at the corner of Elm and Ervay. * * * It had already burned almost into the eye, perforating, in other words, the cornea. The left eye, where he received the bulk of the bottle of the direct contact, his left eye was burned, and severely burned, and it was my opinion, by first looking at it, at first it looked very much like he was going to lose his eye from perforation; the burning of a hole in the cornea, like you burn a hole in the skin. * * * The condition of both eyes was that the cornea was burned, as well as the conjunctiva of both eyes, more especially the left eye; also the skin was blistered, absolutely blistered, clear up to his forehead, burned off on both sides, and especially the left side the burn was more severe, and the effects lasted longer, and the cheeks, the eyelids, the eyebrows were burned off; the hairs were even almost singed; that is, you might say they were abnormal; the edges were really destroyed, and later slipped off; the forehead was blistered and later peeled to a certain extent; the blisters continued on the right side; as I say, the ulcers were not as deep as they were on the left, but he had a very very severe burn of the skin and of the eye—the cornea and the conjunctiva. * * * The left eye was corrected to twenty twenty minus, which is not quite normal. In other words, he will still suffer with eye pain; and as long as that is so, and his eyes cannot be corrected to normal by the aid of glasses, they will give him trouble. I think that condition is permanent, and I think he is indeed lucky not to have more scar tissue, and a greater opacity in that eye than he now has. There is no cure for the conditions that exist in that eye. In his right eye I found his vision twenty thirty minus, and with the lenses, plus twelve spherical, combined with a plus thirty-seven cylinder axis forty-five, they corrected to twenty twenty minus; possibly one is a little better than the other. In

my opinion, now, the lenses that we have fitted him with give him almost apparent normal vision, except for the fact that he can't use his eyes like the average man. If he does, he is going to have trouble; he is bound to have it."

The statement of facts does not disclose that appellee's employer, Jos. Collins, personally received and accepted the ammonia water, or that any one working in the drug store where such ammonia water was delivered actually received same from the person making the delivery for appellant, or that Jos. Collins was advised prior to the explosion as to the dangerous and unsafe manner of its preparation. All the material issues presented by the pleadings and authorized by the evidence to be passed on by the jury were submitted by the court. The following are the facts reflected by the evidence as found by the jury in answer to special issues so submitted, to wit: (That appellant was negligent in selling and delivering the bottle of concentrated ammonia involved in this suit, which was completely filled and in which there was not adequate space for expansion of gases; that such negligence proximately caused an injury to appellee; that appellant was negligent in placing a cork stopper in the bottle of concentrated ammonia which it sold and delivered to Collins' Drug Store at Elm and Ervay streets, in the city of Dallas, Tex., on July 16, 1919; that such negligence proximately caused an injury to the appellee; that appellant was negligent in failing to place a glass stopper in said bottle of concentrated ammonia, which negligence proximately caused an injury to appellee; that appellant was negligent in failing to properly secure and fasten the cork stopper placed in the neck of said bottle of concentrated ammonia by sufficient and adequate strip or band placed over the same and securely fastened to the neck of the bottle in such manner as to protect and hold such cork stopper; that such negligence proximately caused an injury to appellee; that appellant was not guilty of negligence upon the occasion of the accident of which he complains, in that he used such care and caution for his own safety as a person of ordinary care and prudence would have used under the same or similar circumstances in handling a bottle of stronger ammonia water; that appellee sustained and was entitled to recover actual damages in the sum of $5,000 on account of the injuries sustained by him, and the reasonable and necessary medical attention and expenses incident thereto.

The trial resulted in a verdict and judgment in favor of appellee for $5,000; hence this appeal.

[1] All material issues of fact having been submitted to and determined by findings of the jury selected in this case, it is not within the province of this court to assume to discharge those functions delegated only and exclusively confided by law to juries, for, to do so, the right of trial by jury would not only be challenged but, in the instant case, denied. Hence we overrule appellant's assignments of error Nos. 1, 2, 3, 6, 7, 9, and 11 calling into question the submission of special issues Nos. 2, 3, 4, 6, and 8 to the jury; there being in our opinion not only evidence to require the submission of same, but evidence sufficient to support the findings of the jury.

[2] Because the evidence discloses the fact that appellee was in position through employment as clerk in various drug stores, by utilizing the opportunities thus afforded, to have learned, before the date of the accident alleged to have been sustained by him, the effect of heat and cold on ammonia and the effect of failing to leave a definite area for expansion in filling a bottle with stronger ammonia, and the danger incident to handling a bottle full of stronger ammonia with a cork used as a stopper to retain same without being fastened or otherwise secured in the neck of the bottle than by being inserted without being driven in, we cannot assume that by reason of the existence of such opportunities to acquire such information that appellee in fact possessed same, or hold that his failure to so use such opportunities to acquire such information would, in effect, make him guilty of contributory negligence, notwithstanding he testified to the contrary and the jury from all the evidence introduced on the trial of the case found the facts to be in accordance with appellee's evidence. The mere fact that there was other evidence before the jury from which a different conclusion could have been reached will not authorize this court to substitute for the verdict of the jury some other conclusion that may be properly deducible from the evidence as a whole, there being ample latitude in the effect of the evidence on the minds of reasonable men to justify an honest difference in reference to the facts established anent the acts of negligence alleged to have been committed by appellant as the basis of appellee's claim for damages on account of injuries resulting therefrom.

What we have said in disposing of the above assignments applies with equal force to appellant's first assignment of error and proposition No. 6 based thereon, presenting for review the refusal of the court to peremptorily instruct the jury to find for appellant, and to appellant's assignment of error No. 14, which challenged the findings of the jury on all material issues as being contrary to all and not supported by any evidence, and the refusal of the court to sustain appellant's motion for a new trial on account of such assignments. Therefore said

assignments and propositions based thereon are each overruled.

Appellant's assignments Nos. 8, 10, and 12, respectively, claim that the court erred in submitting to the jury the issues whether or not certain alleged acts of negligence on the part of appellant proximately caused appellee's injury, because the evidence was insufficient to sustain a finding by the jury that such alleged acts of negligence proximately caused appellee's injury, to wit: (a) Whether appellant in placing a cork stopper in the bottle of concentrated ammonia proximately caused appellee's injury; (b) whether or not the negligence of appellant in failing to place a glass stopper in said bottle of concentrated ammonia proximately caused injury to the appellee; (c) whether the negligence of appellant in failing to properly secure and fasten the cork stopper placed in the neck of the bottle of concentrated ammonia with sufficient or adequate strip or band placed over the same and securely fastened to the neck of the bottle proximately caused appellee's injury.

The conclusion reached by us in the disposition of the preceding assignments necessarily leads to an adverse holding to appellant's contention in this respect. Therefore said assignments are overruled.

[3] Appellant contends that even if it should be held that it was negligent in the respects charged by appellee, nevertheless there would be no liability on account thereof to appellee, because the undisputed evidence showed that appellant was not guilty of any fraud or concealment in the sale of the ammonia to appellee's employer, but, on the contrary, delivered to the appellee's employer the substance ordered, to wit, two pounds of concentrated ammonia in a transparent bottle; that said ammonia in the container aforesaid was received by appellee's employer in his store at least 1¼ hours before appellee was directed or it became his duty to place it in its proper place in the store; that no danger could arise from said ammonia unless it was exposed to great heat and, there being no evidence as to how the bottle was handled during the period of an hour and a quarter after the bottle had passed out of appellant's control, there was no evidence that appellant's negligence was the proximate cause of appellee's injuries. Therefore the liability, if any, for appellee's injuries, rested upon appellee's employer and not upon appellant.

The evidence does not disclose who received the consignment of drugs including the bottle of stronger ammonia when delivered at the drug store or that appellee's employer, Jos. Collins, knew of the negligent bottling of the ammonia water or even saw same until after appellee had been injured. The testimony, briefly, in this respect, may be summed up as follows: An order was received by appellant from Jos. Collins on July 16, 1919, for certain merchandise, including two pounds of concentrated ammonia water. The order was filled and the goods delivered to some one in the employment of or acting for appellant to be transported and delivered at the drug store where appellee was employed. Appellee was not there when the consignment was received, but, upon his return, saw same on the work table, and, without being instructed by any one, proceeded to perform the duties incident to his employment, which included the marking of merchandise and distributing same to proper places in the store.

The jury under proper issues found that appellee was not guilty of any act of contributory negligence, and that appellant's negligence was the cause of appellee's injuries.

[4] Even conceding that if appellee's employer, prior to the injuries complained of, had been advised as to the condition in which said bottle of ammonia was delivered, and knew of the danger which would be attended by an inexperienced person handling same, and failed to notify appellee of the danger incident to handling said ammonia in its then condition, that such negligence on the part of appellee's employer would be the proximate cause of appellee's injuries and shift all liability for damages resulting therefrom from appellant to appellee's employer, yet it cannot be contended, in the absence of knowledge on the part of appellee's employer as to the dangerous condition in which the bottle of stronger ammonia was delivered, that it was the duty of said employer to examine the consignment of goods to ascertain whether or not appellant had discharged its duty incident to filling his order for an article known to be inherently dangerous when handled in an insecure container before directing or permitting one of his employés to handle same in the ordinary manner necessary to properly place same in stock, and that such failure would constitute acts of negligence on the part of said employer and the proximate cause of appellee's injuries, and would relieve appellant of its acts of negligence in delivering the bottle of ammonia in a condition dangerous for an inexperienced person to handle. However, the evidence does not raise such issue, and it would have been error for the court to have submitted same to the jury, although this theory was in a measure embraced in the issue submitted to the jury calling for a finding both on acts of negligence committed by appellant and the result of such acts of negligence producing injury to appellee. Therefore we overrule appellant's assignment embracing this phase of the case.

Assignment of error No. 15 and propositions based thereon to the effect that the findings of the jury in answer to issues Nos.

10 and 11 of court's charge that appellee was not guilty of negligence upon the occasion of the accident of which he complains, and that such negligence did not proximately cause or contribute to his injury, are contrary to all the evidence and are not supported by any evidence. We are constrained to overrule same as being embraced in our views, supra, in applying the rules of law to the assignments and propositions thereunder, therein discussed.

[5] Appellant's thirteenth assignment of error:

"The undisputed evidence showing that no contractual relationship existed between plaintiff and the defendant out of which plaintiff's injuries arose, that defendant was guilty of no fraud or deceit in the sale and delivery of the bottle of ammonia to plaintiff's employer, who was a retail druggist and therefore presumptively familiar with the properties and propensities of concentrated, or stronger ammonia water, and the evidence failing to show that concentrated ammonia or stronger ammonia water (the substance sold and delivered to plaintiff's employer) is an article necessarily or imminently dangerous to the safety or lives of those engaged in the retail drug business, the findings of the jury, and each of them, that defendant was negligent (a) in selling and delivering the bottle of concentrated ammonia completely filled and that an adequate space was not left therein for the expansion of gases; (b) in placing a cork stopper in the bottle; (c) in failing to place a glass stopper in the bottle; and (d) in failing to properly secure and fasten the cork stopper placed in the neck of the bottle by sufficient and adequate strip or band placed over the same and securely fastening the same to the neck in such manner as to protect and hold in place such cork stopper, are contrary to law in that under the circumstances connected with the sale and delivery of the bottle of ammonia to plaintiff's employer, the failure of defendant to use any and all of the precautions enumerated did not constitute a breach of any legal duty which defendant owed plaintiff"

—presents the very crux of this appeal in reference to which the majority of the other assignments occupy the position of mere satellites. Two propositions are presented under said assignment and contended for by appellant's counsel with much zeal and ability: (a) That no contractual relationship existed between appellee and appellant out of which appellee's injuries arose; (b) that the acts of negligence charged against appellant did not constitute a breach of any legal duty which it owed appellee. Therefore under no theory of the case was appellant liable to appellee on account of the acts of negligence alleged to have been committed by appellant as the proximate cause of the injuries sustained by appellee. In support of this, appellant contends that appellee's whole case falls unless he has established the fact that the concentrated ammonia water sold and delivered by appellant to appellee's employ-

er under the circumstances established by the evidence was in substance inherently dangerous to the safety of the public generally. The evidence established the following facts: Stronger ammonia water is an exceedingly volatile, inflammable liquid gas. It is gas concentrated into liquid form and is subject to evaporation. As it evaporates the acid fumes from it are very poisonous; they not only produce death, but they produce burns and blisters, resulting in scar tissue and destruction of tissues. It is explosive; it is combustible within its own nature—within its own products. It is a caustic, volatile alkali; it is continually giving off gas, and the more gas it gives off in the bottle the greater the pressure that will be exerted on the inside of the bottle; that it is necessary in bottling stronger ammonia water that the bottle should be partially filled, leaving about 20 per cent. of the capacity thereof to allow space for expansion to keep it from blowing up, using a glass stopper and strong bottle, to handle same with reasonable safety in being dispensed to the retail drug trade or the public generally.

Appellant's secretary-treasurer and business manager testified:

"I knew when I sent that ammonia out that a man would handle it and put it in the shelf, and I thought a man would handle it that knew what he was doing; that everybody who works in the front end of a drug store is not necessarily a pharmacist; some of them are and some are not. We knew that when we delivered the ammonia to Collins. I knew it was dangerous, that there was a danger of explosion when I sent that bottle out"

—which we believe sufficient for us to hold that, by reason of the delivery of the bottle of stronger ammonia, a legal duty arose in favor of the appellee distinctly and apart from the contract for the purchase and sale of the ammonia created between appellant and appellee's employer, a duty implied by law. However, not a duty owing by appellant to the general public, but to that section or portion of the public invited by the business in which appellant was engaged to carry on business relations involving the purchase and sale of merchandise, drugs, etc., with appellant, including appellee's employer. The law imposes the obligation on appellant in dealing with its customers involving the preparation, sale, and delivery of a known inherently dangerous article, whether it be liquid or other form, to so prepare such article for delivery that same may be handled with reasonable safety by all who might in any way in the employ of the purchaser, as in the case of appellee, be brought in contact with it. In other words, it was the duty of appellant in the delivery of said bottle of stronger ammonia to so protect and guard it from explosion that harm therefrom should come to no one

of the employees of the purchaser of said ammonia through the handling of same in the course of the discharge of their duties incident to employment. As dispensed for delivery and in the condition delivered, the stronger ammonia water became a dangerous agency; the danger being put in motion by appellant at its peril to respond to appellee for the injuries thereby occasioned, same not being caused by extraordinary natural occurrences by the intervening act of an independent agency or by the interposition of strangers. It was without fault on the part of appellee that the bottle of stronger ammonia water was delivered in such condition as to render same inherently dangerous to one not apprised of the danger of handling same, and the fact that appellee did not have information sufficient to apprise him of the danger that would attend the handling of same in the discharge of his duties cannot be charged as a fault on his part so as to relieve appellant of liability for its negligence. Therefore appellant must be held liable for the injuries sustained by appellee in consequence of the failure on the part of appellant to deliver said bottle of stronger ammonia water in a reasonably safe condition whereby appellee was injured in the handling of same as shown by the testimony.

As shown by the evidence, the wrongful act was immediately dangerous to appellee, in that appellee was an employee of the purchaser in the drug store at which said ammonia was delivered, and appellant knew that some one of the employees of the purchaser working in said drug store would handle said bottle of ammonia, and that all of the parties working there were not chemists, pharmacists, or necessarily familiar with the danger incident to handling stronger ammonia not put up in proper packages, and "knew that it was dangerous, and that there was danger of an explosion when the bottle was sent out."

So far as the proof shows, appellee was the first person to come in contact with appellant's negligence, suffering therefrom the injuries to his face and eyes as established by the evidence, together with a bystander who sustained slight injuries by the explosion, whereby the wrongful act was immediately dangerous to others besides the appellee's employer with whom appellant contracted. This we think sufficient to show clearly a breach of duty or obligation imposed on appellant by law, in that the legal duty rested upon appellant to use that degree of care and caution that a person of ordinary prudence would have used under the same or similar circumstances in preparing said bottle of ammonia to be delivered to the purchaser so as to guard against injury to any one of the purchaser's employees in handling said bottle of ammonia in a reasonably prudent manner in placing same in stock, and upon this duty appellee had the right to rely.

We therefore overrule appellant's thirteenth assignment of error and propositions based thereon.

In support of the conclusion reached the following authorities have been consulted: Armstrong Packing Co. v. Clem (Tex. Civ. App.) 151 S. W. 576 (writ of error denied 106 Tex. 612); Colyar v. Bottling Works, 114 Ark. 140, 169 S. W. 810; Burkett v. Studebaker Bros. Mfg. Co., 126 Tenn. 467, 150 S. W. 421; Waters Pierce Oil Co. v. Davis, 24 Tex. Civ. App. 508, 60 S. W. 453; MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1051, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440; Johnson v. Cadillac Motor Car Co. (C. C. A.) 261 Fed. 878, 8 A. L. R. 1023; Tom v. Shoe Mfg. Co., 215 Fed. 881, 132 C. C. A. 221. Grant v. Bottling Co., 176 N. C. 256, 97 S. E. 27, 4 A. L. R. 1090; Clement v. Crosby & Co., 148 Mich. 293, 111 N. W. 745, 10 L. R. A. (N. S.) 588, 12 Ann. Cas. 265; Pierce v. Thresher Co., 153 Mich. 323, 116 N. W. 1104; Mazetti v. Armour & Co., 75 Wash. 622, 135 Pac. 633, 48 L. R. A. (N. S.) 213, Ann. Cas. 1915C, 140; Torgesen v. Schultz, 192 N. Y. 156, 84 N. E. 956, 18 L. R. A. (N. S.) 726, 127 Am. St. Rep. 894; Statler v. Ray, 195 N. Y. 478, 88 N. E. 1063.

[6] While not necessary to the disposition of this appeal, yet we think it advisable to make the following observation anent appellee's counter proposition No. 4 to the effect that all the issues of negligence presented by the pleading and the proof were not submitted to the jury because no request was made for their submission, and "that this was particularly true of the issue of negligence of appellant in not giving appropriate, timely, and necessary warning of the danger of an explosion by writing or printing on said bottle when the defendant knew of the existence of such danger," and that under the circumstances the entry of a judgment in appellee's favor was equivalent to a finding that the appellant was negligent in such respect. This construction sought to be placed on article 1985, Revised Statutes 1911, cannot be sustained under the facts in this case, for it was appellee's duty to request the submission of such issues of appellant's negligence as he believed should be submitted under the pleadings and evidence, and, having acquiesced in the theory of the case as submitted by the trial court to the jury in the form of special issues, he is not now in position to claim that in support of the judgment rendered it will be assumed that the facts necessarily involved in such issue were found and determined to exist in favor of appellee's theory of the case; but, to the contrary, it should be held in the condition of the record that such issue was abandoned by appellee and thus eliminated from the

case. San Antonio Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 638. Therefore, in reaching our conclusion, we did not consider as a part of the negligence established, "the failure to give appropriate, timely, and necessary warning of the danger of an explosion by writing or printing on said bottle of stronger ammonia when the appellant knew of the existence of such danger."

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.

### On Appellant's Motion for Additional Facts.

Granting said motion, we find the following additional facts:

Appellee had had over 13 years' experience in the drug business before he began to work in the drug store where he was injured. He worked in two different retail drug stores under the same management, in St. Louis, for about 3½ years; he did general counter work, always termed "front man," and during his employment at such drug stores was assistant manager. He worked in another retail drug store, owned by Jno. Berry & Co., for a year and two months as assistant manager.

On cross-examination appellee testified as follows:

"I was holding the bottle with the stopper away from me, just about that (indicating), at an angle of about 45 degrees. I was holding it at that position when the cork blew out. I held that bottle with the stopper pointing away from me at an angle of 45 degrees for the simple reason that it wasn't such a bottle as I had been accustomed—what packages I had received during the year's experience as a practical druggist, I have never seen it bottled that way; I have always seen it only partially filled with a glass stopper and always with a gut string, and when this had an ordinary cork and was filled all the way up in the neck of the bottle, I don't know, something must have told me to be afraid; anyway, I held it at a distance. The fact that the bottle was filled up to the neck, the way it was filled, put in my mind the idea that there might be a dangerous substance in it; something told me to be afraid; anyway, something came up that I held it at a distance. I can't tell you otherwise, more than that it was a bottle different from what I have ever seen it in, and something told me to be afraid and keep it at a distance, and that is what I was doing."