ANNE MURPHY v. BARLOW REALTY COMPANY AND
OTHERS.
DINAH ZELICKSON v. SAME.[1]

December 29, 1939.

Nos. 32,148, 32,149.

[1]Reported in 289 N. W. 563.

*Kyle & Kyle* and *R. Paul Sharood,* for appellant Anne Murphy.

*Maugridge S. Robb,* for appellant Dinah Zelickson.

*D. E. LaBelle* and *Thomas Kneeland,* for Ernest M. Ganley Company, Inc., respondent.

HILTON, JUSTICE.

Two actions were instituted to recover damages, one by Anne Murphy to recover for personal injuries; the other by the special administratrix of Max Zelickson to recover damages for his death. A demurrer was interposed to each complaint by defendant Ernest M. Ganley Company, Inc. Plaintiff Anne Murphy appeals from the order sustaining the demurrer. In the other case the appeal is from the judgment entered after demurrer was sustained. Hereafter we shall regard the case as though Anne Murphy alone were plaintiff since the problems presented are identical.

Defendants Red River Lumber Company and Barlow Realty Company owned a building in Minneapolis. On August 7, 1933, a fire materially damaged it and completely destroyed some portions, including part of the beams, girders, and supports. The owners employed the Ganley company to make an inspection and to report the condition. This was done. Because of the report, it is alleged that the owners knew or should have known "the kind, condition, strength and availability of the ruins and the materials therein, and the propriety and impropriety of using or attempting to use the same or parts thereof in repair and reconstruction."

In August, 1933, the owners and the Ganley company undertook to rebuild the third floor of the premises. It appears that it was here that the severest damage occurred. This portion of the premises was to be used for warehouse purposes to store merchandise of great weights and, in addition, to supply working quarters. The work of rebuilding involved providing supports and flooring and to provide on the second floor at the front and street end office facilities. On the first floor in the same general location, sales and display rooms were to be built.

The complaint alleges that in the construction of the third floor proper woods and construction methods were used to the rear of the space above the office and sales rooms. But as to the space overlying them, it is alleged that defendants—

"with full knowledge of the use to which the front portion of said third floor would be put, and that directly thereunder were quarters to be occupied by human beings, *wilfully, wrongfully, unlawfully and with careless and negligent disregard* of the safety of persons lawfully to come upon the premises for the purposes for which the same was being constructed * * * did * * * use materials wholly unsuited and unfit * * *." (Italics supplied.)

More specifically the charge is that the joists were made of old, inferior, cross-grained planks full of knots and weakened by fire and rot and that defendants improperly supported them by girders, beams, and sidewalls.

Plaintiff also alleges that with knowledge of the inadequacy and insufficiency of the construction and its unsuitability for the purpose built, "defendants did further wilfully, wrongfully, carelessly and negligently, and for the purpose of concealing the same, cover such construction both above and below with flooring and ceiling materials back to the proper construction at the rear hereinbefore described," and by the use of paints, up as far as the portion correctly built, concealed the defects and made it appear the supports were strong and new.

As a result of these acts, it is alleged that defendants created a trap, nuisance, and a condition intrinsically dangerous to life and limb of persons for whose use the premises were being prepared. It is then alleged that the "improperly constructed portion of said building collapsed as a direct and proximate result of the wrongful, unlawful and careless and negligent acts of the defendants aforesaid." Then follows an allegation:

"That as a direct and proximate result of the wilful, wrongful, unlawful, and careless and negligent acts and omissions of the

defendants and each of them, as aforesaid, and as a direct and proximate result of said collapse plaintiff" suffered certain injuries.

Plaintiff, an employe of the tenant, now sues for damages. Defendant Ganley company interposed a demurrer, which was sustained.

At the outset, to clarify the ground for further discussion, it is essential to examine the nature of the complaint. Whatever may have been plaintiff's design, we are satisfied that under the complaint only proof of wilful negligence can sustain a recovery. The essence of the pleading, as disclosed by the outline previously given, charges that defendants wilfully and intentionally used improper materials and construction methods and purposely concealed the defective portions so that those foreseeably likely to use the premises would be lulled and deluded into belief of safety and security although the structure was actually a trap known to be perilous to future users, who, because of the concealment, would not be aware of the intrinsic danger latent at all times.

While wilful negligence has been adopted into our law, it is not an accurate term. See dissent, Jaggard, J., in Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 230, 114 N. W. 1123, 14 L.R.A. (N.S.) 886. See 24 Minn. L. Rev. 81, et seq. But it has been employed so often by us and members of the bar that a reasonably definite meaning has attached indicating a particular form of conduct. The scope of the pleading requires proof of wilful negligence on the part of the builder in order to avoid the question of material variance. The crux of the theory of pleading disclosed is that the wilful negligence of the contractor in exposing plaintiff to a risk of injury known and appreciated by all defendants justifies imposition of liability. The source of the responsibility is the wilful creation of a trap artfully concealed by the contractor and the owners.

While it is true the complaint contains the words "negligently" and "carelessly," still these are merely one of plaintiff's general characterizations of the particular facts alleged. As we under-

stand the complaint, the particular facts alleged are congruent with wilful negligence rather than negligence absent "wilfulness." To illustrate, in the allegations respecting concealment of the defective structure by the use of certain materials and paint, both of the mentioned words are incorporated into the pleading along with the charge that these acts were done for the purpose of concealing the defective work. Obviously ordinary negligence is not an intentional tort. As such, it can only result from conduct uncontrolled by intent. Plaintiff has set forth in detail the specific acts upon which she relies. The general allegations must be regarded as limited and controlled by the particular allegations. As we understand the latter, they are referable to wilful negligence. A survey of the pleading indicates that the particular allegations are at odds with the general allegations of negligence, and therefore the former must control the theory of the pleading. Informative is the fact that the complaint is sprinkled with allegations of knowledge on the part of the defendants. The heart of the pleading is that defendants knowingly and wilfully exposed plaintiff to peril which could have been avoided by proper construction. This of course is the very nature of "wilful" negligence.

With this discussion of the pleading in mind, we must turn to the substantive law to resolve whether the complaint states a cause of action against the Ganley company upon the theory advanced.

Efforts to determine the precise nature and orbit of the contractor's liability to third persons after the object has been accepted by the owner have been a fertile source for confusion. Whatever may be the so-called general rule, see 9 C. J. p. 751; note, 22 Minn. L. Rev. 709, 714, there can be no doubt that, upon reason alone, a contractor who, with wilful negligence, constructs such an instrumentality of danger as that involved here, cannot escape liability. In O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 1013, 32 L.R.A.(N.S.) 980, 136 A. S. R. 503, liability was imposed upon proof of negligent construction of a

bridge so that it was a latent trap of death or injury to all who passed over it. The court accepted and applied the statement of Brett, M. R., in Heaven v. Pender, 11 Q. B. D. 503, 509, which is as follows [110 Minn. 367]:

"Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

If this concept of duty prevails with respect to negligence, manifestly there is ample reason to apply the same principle with respect to one guilty of wilful negligence, for there the builder is responsible for creating a structure of concealed danger although the risk to which it will expose persons who will use it is apparent to him. Such conduct has the stigma of moral and social condemnation. The duty to the injured person is clear. As pointed out in the O'Brien case, 110 Minn. 364, 125 N. W. 1012, Winterbottom v. Wright, 10 M. & W. 109, and decisions which proceed upon a misinterpretation of it do not operate to bar tort liability. See also 22 Minn. L. Rev. 709, 715. If the allegations are true, the Ganley company's wilful conduct is hardly short of intentional and fraudulent creation of a trap saturated with danger and the source of a death-dealing force. Surely no reasonable person can expect the law to lend countenance to such activity. The mere fact that the construction was pursuant to a contract with the owners does not provide a convenient key to escape the duty otherwise existing. What was said in Moon v. N. P. R. Co. 46 Minn. 106, 109, 48 N. W. 679, 680, 24 A. S. R. 194, is, in principle, equally applicable here:

"One may owe two distinct duties in respect to the same thing,—one of a special character to one person, growing out of special relations to him; and another, of a general character, to

those who would necessarily be exposed to risk and danger from the negligent discharge of such duty."

In Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171, 174, by dictum it was said, p. 235:

"There is no difficulty in reaching the conclusion that a contractor, who installs an electric distribution plant for a municipality, owes to its citizens the duty to see that it is delivered in a safe condition for their use."

Equally applicable to the situation before us is the statement of Mr. Justice Jaggard in the O'Brien case, 110 Minn. 369, 125 N. W. 1014, 32 L.R.A.(N.S.) 980, 136 A. S. R. 503:

"Few things, like substances capable of spontaneous explosion or combustion, as wet hay, nitro-glycerine, and flour dust, are intrinsically dangerous. Most perils arise from instrumentalities innocent in themselves, but capable of doing harm on being used in an ordinary and natural manner, as even poisons and most explosives. The initial wrong of exposing innocent persons to the probability of harm from either kind of instrumentality is the same in kind, and may or may not be the same in degree."

Extended discussion is not necessary to establish that the building as repaired was an object of intrinsic danger, and surely the risk to prospective users was apparent to all who participated in the rebuilding. Only common justice needs to be resorted to in order to justify imposition of tort liability upon the owners and contractor whose wilful negligence created the peril. This being so, liability must follow. Restatement, Torts, § 385, states:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those stated in §§ 394 to 398, 403 and 404 as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."

A detailed discussion of this section. of the Restatement is unnecessary. It is sufficient to state that it amply supports the proposition that one who, by wilful negligence, creates a trap must respond to injured persons for his default.

From the discussion it is now apparent that a duty rested upon the Ganley company to refrain from the wilful negligence charged in the complaint. This being true, the breach of that duty and the resulting injury follow logically. In other words, causation is not a concern here at all. Rather the only problem is whether liability should be shifted from the builder to the owner who has accepted the work. Liability otherwise presently existing, such a shifting can only be justified upon the ground that public policy decrees that this be done.

An inquiry shows that public policy dictates that responsibility, having attached to the contractor, must continue thereafter in the situation herein presented. Society today is predominantly one of complex interrelation and specialization. Urban life exposes every individual in the ordinary pursuit of his occupation to a tremendous variety of constructed instrumentalities and objects. Overhanging signs, huge buildings, bridges, and numerous other things are erected or constructed by persons specializing in the particular field. While there is no privity of contract between members of the general public or with the persons who are foreseeably going to make use of the object, still confidence is reposed in the contractor by these individuals by the very nature of society. This suggests that the law must recognize that those who have a part in building have a duty greater than simply performing a contract irrespective of how fraudulent its nature may be on the persons likely to use the premises. Public policy is essentially a balancing of interests. If a contractor is to be protected from liability in the situation here, that is, "insulated" because he has completed the building and turned it over to the very ones who participated in the wrongful conduct, some sound reason must be found. At the outset, one who, as here, wilfully constructs such a latent trap has not much to recommend himself to leniency. In fact, a survey indicates there is a general

tendency throughout the law to impose upon a manufacturer or builder liability for defective construction, especially where it is the product of wilful negligence. See, generally, Restatement, Torts, §§ 388-406. More specifically, § 403 provides:

"One, who as an independent contractor, makes, rebuilds or repairs a chattel for another and turns it over to the other knowing that his work has made it dangerous for the use for which it is turned over is subject to liability as stated in §§ 388 to 390."

Other indications of the general trend toward liability by manufacturers can be seen in Krahn v. J. L. Owens Co. 125 Minn. 33, 145 N. W. 626, 51 L.R.A.(N.S.) 650.

For defendant Ganley company there is one factor in its favor which demands discussion. That is, after completion and acceptance by the owner it is no longer possible for the builder to exercise control. This of course does not detract from the character of the original wrongful act. It might be that there are instances where the contractor by proper offer to the owner could relieve himself from responsibility for the original default. And of course the length of time between completion and the injury is a factor to be considered in determining whether the contractor's default was a cause at all in the ultimate result. But in the ordinary situation there is no more reason to relieve the builder of a latent trap than to absolve a defendant in such a situation as was involved in Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829. In the situation presented here, the contractor, according to the pleadings, wilfully built a portion of the building knowing that it was going to be turned over to persons who, according to the allegations, were as much parties to the improper construction as he was. Why, then, should he justify his conduct by the fact that they took control?

The Ganley company emphasizes the fact that the owners knew of the defects. While there may be occasions where knowledge or lack of it on the part of the owners is an important factor, yet we do not think grounds exist to relieve the Ganley company

upon the basis suggested. The owners knew of the defects, in fact contracted with the Ganley company that it should build the damaged portions as it did. Clearly, then, the Ganley company, knowing the risk to which it exposed prospective users, could not justifiably believe that the owners would correct the wilful defaults which rendered the building intrinsically dangerous for the use contemplated at the time it was repaired. Actually, instead of relieving the Ganley company, the owners simply were and continued to be joint tortfeasors and equally guilty of reprehensible conduct. However true and meritorious defendant Ganley company's contention may be (we do not determine) as applied to the proper situation, we are satisfied, under the facts presented, it is in vain.

We do not regard Goar v. Village of Stephen, 157 Minn. 228, 196 N. W. 171, as authority as applied to the theory here under discussion. A reading of the opinion will disclose that there were factors in the Goar case which we regarded as controlling but which are absent here.

The complaint states a cause of action. It was error to sustain the demurrers. In case No. 32,148 the order appealed from is reversed. In case No. 32,149 the judgment appealed from is reversed.